## WESTERN UNION TEL. CO. v. THORN.

(Circuit Court of Appeals, Third Circuit. November 22, 1894.)

**1.** TELEGRAPH COMPANIES—INJURIES BY BROKEN WIRE IN CONTACT WITH ELECTRIC WIRE—EVIDENCE.

In an action against a telegraph company for injuries to a boy 10 years old, it appeared that the boy took hold of a broken call wire hanging from the crossbar on one of defendant's poles, and received a severe electric shock; that there was an electric light wire on the pole, below the crossbar; that the electric light plant was not owned by defendant; and that soon after the accident the broken wire was repaired. *Held*, that evidence was admissible that nine months after the accident there was no guard or dead wire between the call wire and the electric light wire, as was usual in such cases, and that the call wire was then defective by reason of long use and rust.

**2.** SAME—NEGLIGENCE—PROXIMATE CAUSE.

There was evidence that the call wire had become weakened by long exposure, and that it had been mended and patched in several places, so that it was liable to be broken from any slight cause, and that there was no guard or dead wire to prevent its falling across the electric wire and becoming dangerously charged. *Held*, that the questions of negligence and of proximate cause were properly left to the jury.

**3.** SAME.

Where it was certain that plaintiff's injuries were the result of the contact of the call wire and the electric wire, it was immaterial whether the contact was at the place of the accident or elsewhere, if such contact was caused by defendant's negligence.

**4.** APPEAL—REVIEW—OBJECTIONS WAIVED.

Objection to the denial of defendant's motion for nonsuit, made at the close of plaintiff's evidence, is waived by the subsequent introduction of evidence by defendant.

In Error to the Circuit Court of the United States for the District of New Jersey.

Action by Merritt Thorn, Jr., by his next friend, Merritt Thorn, Sr., against the Western Union Telegraph Company, for personal injuries caused by defendant's negligence. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Rush Taggart and Edw. H. Duryee, for plaintiff in error.

John W. Westcott, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and WALES, District Judge.

WALES, District Judge. This was an action by Merritt Thorn, Jr., by his next friend, Merritt Thorn, Sr., against the Western Union Telegraph Company, to recover damages for injuries received by the plaintiff, and alleged to have been caused by the negligence of the defendant. The action was originally brought in a court of New Jersey, and was removed by the defendant to the United States circuit court. The evidence was that on the 17th day of November, 1891, at about 4 p. m., the plaintiff, then aged between 10 and 11 years, was walking along Delaware avenue, in Camden, N. J., carrying a bundle of slats, and, seeing a telegraph wire hanging down between two poles, attempted to break off a piece for the purpose of tying the slats together, when he received a strong electric shock, which threw him to the ground. Being unable to relax his hold on the wire, his cries for help brought to his aid—First, Mr. Eckenrode, who, in endeavoring to release the boy, received a shock which "drew" him against a fence some seven or eight feet distant; and, second, Mr. Hatch, who, almost at the same time, came running from the opposite side of the street with an axe, and, cutting the wire, released the boy from his perilous situation. In the few seconds which had elapsed from the boy's first touching the wire, it had burned deeply into his hand. The plaintiff was seriously, if not permanently, injured by the result of the accident, before which he had been a healthy, strong, and unusually bright lad. His right hand is now badly, and perhaps incurably, crippled, his hearing and memory are impaired, and there is a general loss of nervous power. Thus far the plaintiff's testimony was uncontradicted, and the controversy between the jury was confined to two questions of fact: First, as to the ownership and control of the wire by the defendant; second, whether the defendant had been guilty of negligence. To support the affirmative of these issues, the witnesses produced for the plaintiff were Mr. Eckenrode and Mr. Duke; and from their testimony it appeared that the broken wire hung from the outer end of the top crossbar of the telegraph pole, and that below the under crossbar there ran an electric light wire supported by a bracket on the pole. There is an electric plant and power house in Camden, located a very short distance from the place where the plaintiff was hurt, but that wire was not the property nor under the control of the defendant. The broken wire was a messenger call wire, and the inference was that it had fallen across the electric wire, and, becoming strongly charged with electricity, caused the injuries complained of. That portion of the call wire which had been cut off by Mr.

Hatch was examined by Mr. Eckenrode immediately after being removed from the boy's hand, and found to be so rotten that it could be easily broken, exposing the center or core of the wire, which was about as thick as a pin, the rest of it being rusted through. After the break in the wire had been repaired, it was traced through various call boxes, some of which belonged to or were operated by the defendant, to the defendant's office in Camden, and intermediately it was found to be patched in a good many places. The call wire was not traced into the defendant's office, but only to the pole outside, from which it was looped into the office. This call wire is very slightly charged with electricity, and of itself is entirely harmless, but, when in contact with an electric light wire sufficiently charged to carry the lights of a city or propel a trolley car, will transmit a severe, dangerous, and possibly fatal current to whoever takes hold of it. There was no proof of the ownership of the electric light wire, nor of the precise point at which the broken wire had come into contact with it. Mr. Duke, who had had practical experience in the superintendence of telegraph wires, said that a call wire, such as the one described, exposed to the weather, would last six or seven years.

At the conclusion of the plaintiff's testimony the defendant's counsel moved for a nonsuit, because—First, there was no testimony legitimately tending to show that the wire which was broken was the property of the defendant, or that it was in its custody or control; second, the testimony of the plaintiff did not establish that the breaking of this wire was the result of any negligence on the part of the defendant; third, there was no testimony to show how the broken wire was charged with the electric current causing the injury, or that the defendant was in any way responsible for the transmission of such current. The motion for a nonsuit was refused by the court, and thereupon the defendant produced one witness, Louis Sharp, a lineman of the Delaware & Atlantic Telephone Company, who testified that the heavy wire spoken of by Messrs. Eckenrode and Duke was not run over the Delaware avenue poles until some time in the summer of 1893, and was used as a ground wire to form a metallic circuit, and not for electric light or car currents, and was entirely harmless. This witness had charge of the lines on Delaware avenue, and was familiar with their respective positions on the crossbar. On cross-examination he said:

"Q. Do you know where the Western Union lines are,—any of them? A. In the city? Q. Yes. A. Yes; I know where some of them are. Q. Do you know where any of them are on Delaware avenue? A. I know where they are on that line of poles. I know the wire. That is all I know about it,—that one wire. Q. Where is that one wire? A. It is the top wire on the fourth pin on the east side of the line. Q. That is the Western Union wire? A. Yes, sir."

This witness, before the close of his examination, said that he did not know who was the owner of the call wire. The plaintiff had a verdict, and the defendant excepted to the charge of the court. There are nine assignments of error, of which the first two are to the admission of evidence, and as they relate to the same matter may be

considered together. The witness Duke, being examined as to the number of wires on the crossbars, was asked, "Was there an electrical wire there?" replied:

"There was an electrical wire under the bottom crossbar, on a bracket. Q. Was there anything between this outside wire on the top row and the electrical wire beneath? A. Nothing that I seen at that time; no, sir. Q. What is usual, in the business, to protect an ordinary telegraph wire from coming in contact with an electrical wire on the same pole?"

The objection to this question having been overruled, the witness answered:

"All the wires that ever I supervised in having run were always provided with a guard wire when they crossed an electrical wire of any kind."

The witness described the guard wire as a dead wire running between wires of lighter and heavier currents, to prevent the latter two from coming into contact with each other. The same witness, on being asked what was the condition of the call wire at a place about two squares distant from the place of the accident, answered: "In pretty fair condition at that place; better than at the other place." This was also admitted against the defendant's objection. The exception in each case was that it was attempted to prove by the witness the condition of the wire, not at the time of the accident, but some nine months afterwards. The broken wire was repaired soon after the accident by the insertion of a new piece, and replaced on the crossbar. Eckenrode described its brittle condition at that time, and Duke, who saw the call wire some months later, testified that it had been patched in other places as well. The objection to this testimony, therefore, has no other foundation than the lapse of time between November 17, 1891, and September 1892; and the question arises whether a substance like this wire, exposed to the atmosphere and used as it was, would, within that period, have undergone such marked deterioration as to warrant the exclusion of the plaintiff's evidence. It is not necessary that evidence should be conclusive, to render it admissible. It had already been proved that the wire was patched in 1891, and the evidence objected to was corroborative, and to show that it was in the same condition in 1892. The absence of a guard wire, in 1892, was admitted to show, by inference, that it had not been employed in the previous year, and that if it had been in use on November 17, 1891, the accident would not have happened. It shifted the burden of proving the contrary on the defendant. These objections were untenable.

The third assignment is to the refusal of the court to grant the motion for a nonsuit, but exception to this refusal was waived by the subsequent introduction of evidence for the defense. This, however, did not preclude the defendant's counsel, at the close of the evidence on both sides, from presenting the same questions which were raised on the motion for a nonsuit, in his requests for instructions to the jury. In Railroad Co. v. Hawthorne, 144 U. S. 206, 12 Sup. Ct. 591, Mr. Justice Gray, speaking for the court, said:

"The question of the sufficiency of the evidence for the plaintiff to support his action cannot be considered by this court. It has repeatedly been de-

cided that a request for a ruling that, upon the evidence introduced, the plaintiff is not entitled to recover, cannot be made by the defendant, as a matter of right, unless at the close of the whole evidence; and that if the defendant, at the close of the plaintiff's evidence, and without resting his own case, requests and is refused such a ruling, the refusal cannot be assigned for error."

See, also, Railroad Co. v. Mares, 123 U. S. 713, 8 Sup. Ct. 321; Robertson v. Perkins, 129 U. S. 236, 9 Sup. Ct. 279; Insurance Co. v. Crandal, 120 U. S. 527, 7 Sup. Ct. 685; Railroad Co. v. Daniels, 152 U. S. 687, 14 Sup. Ct. 756; Runkle v. Burnham, 153 U. S. 222, 14 Sup. Ct. 837.

The fourth and fifth assignments are to the refusal of the court to charge the jury that the plaintiff failed to prove negligence on the part of the defendant, or that, if the defendant was negligent, its negligence was the direct and proximate cause of the injuries complained of. The court, on these points, instructed the jury as follows:

"A telegraph company is bound to see that its wires are in such condition and of such character that the free and uninterrupted and safe use of the highway shall not in the least degree be disturbed. It is not bound and does not insure the absolute strength and the absolute permanency of its plant, or its poles or its wires. But it is bound to take such care of them as a prudent, careful person would take of property of similar character, exposed to the effect of the atmosphere and of the weather, and in constant use, as those wires and poles were. Now, it is for you to apply this rule of care to the circumstances of this case, and to say whether the plaintiff has proved negligent conduct on the part of the defendant in this respect. And I charge you, as a matter of law, that the mere fact that a telegraph wire is broken does not, of itself, imply negligence. * * * There must be something beyond that in order to convict them. Now, the plaintiff relies upon the actual, physical condition of the wire itself, at the time the accident occurred, as evidence of negligence. * * * The only witness who speaks of it is Mr. Eckenrode, who says that at the time of the accident he picked up a piece of the wire cut off about twenty feet long; that it was rusty and considerably eaten into; the thickness of the wire undiminished in strength was about as thick as a common knitting needle. * * * Now, the question for you is, is it negligence to permit a wire having the thickness and tenacity of a knitting needle to be stretched over a space as large as that between two telegraph poles which support it? Is that negligence? It may have been a much thicker wire when it was first stretched there, but if it had left in it, at the time of the accident, a sufficient strength and tenacity to maintain its position between two poles the distance apart usually taken for telegraph poles, was it an act of negligence to permit it to stay there? Understand that the mere breaking of it is not negligence, unless you find that the breaking was caused by the actual condition of the wire. But is there any evidence of that? Whatever we might personally think about it, the question is, what has been proved to you about that wire? And it is in that evidence it is for you to say whether that wire, in that condition, having it up between the poles, the thickness of a knitting needle, is an act of negligence or not."

The questions of negligence and of proximate cause were properly left to the jury to decide on the whole evidence. The defendant's counsel assumes that there was not sufficient evidence to require the submission of the case to the jury, but in this he is mistaken. The question of negligence, like any other disputed fact, is to be passed upon by the jury, except when the undisputed evidence is so conclusive that the court would be compelled to set aside a ver-

dict returned in opposition to it.   Ordinarily, where there is any testimony tending to show negligence, it is a question for the jury. Elliott v. Railroad Co., 150 U. S. 246, 14 Sup. Ct. 85; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569; Railroad Co. v. Stout, 17 Wall. 657.   And the like rule applies to the question of proximate cause, and is thus stated in Railway Co. v. Kellogg, 94 U. S. 469, by Mr. Justice Strong:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury.   It is not a question of science or of legal knowledge.   It is to be determined as a fact, in view of the circumstances of fact attending it.   The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place.   2 W. Bl. 892.   The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation?   Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there 'some new and independent cause intervening between the wrong and the injury?   It is admitted that the rule is difficult of application.   But it is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen, in the light of the attending circumstances."

Injuries arising from the accidental contact of live wires with the dead wires or with gas pipes, etc., are of frequent occurrence, and in most instances might have been provided against by ordinary care and vigilance.   The broken wire was the primary cause of the injuries to the plaintiff.   If it had become weakened by long use and exposure, to such a degree as to part by its own weight, or from a slight motion produced by the wind, it was a fair question for the jury to decide whether 'the defendant had not failed in its duty to the public by allowing its wire to get into such a condition that it would easily break, and in breaking would be likely to fall across the electric light wire, and become dangerously charged. It was not incumbent on the plaintiff to prove more under this head.

The sixth assignment is to the refusal of the court to charge that, although 'the defendant might be guilty of negligence as to the broken wire, yet if the evidence satisfied the jury that there was a current sent from an electric light wire over this broken wire from some other locality than this (the place of the accident), as the result of some unexplained cause, in that event the defendant was not liable.   In refusing this request the court said:

"I decline to charge that, because it admits the negligence of the defendant, and it was responsible for all the acts that might arise from that negligence.   The negligence in this case would be, if at all, the breaking of the wire in such a way that it fell across a wire from which the electric shock could be given."

The defendant's counsel admits that perhaps he was not entitled to the request, in the form in which it was made, but contends that the language used by the court in refusing it was misleading to the jury, in that they would understand that, in case they found the wire broken, then they might proceed to treat the injury as the re-

sult of negligence, and hold the defendant liable. The argument goes back to the evidence of proximate cause. There is no reason why the plaintiff should have been compelled to prove the particular spot where the two wires came into contact. It is certain that the injury to the plaintiff was the result of the contact of these two wires. It can be accounted for in no other way. It would seem, therefore, to make very little difference, if any, in the liability of the defendant, whether that contact was at the place of the accident, or a hundred or more feet distant from it, provided that the coming into contact of the wires was caused by the defendant's negligence, for there can be no doubt that the broken wire conveyed the electric shock to the plaintiff's body. In all probability, the point of contact was somewhere between the two poles, and not far from where the boy was stricken down.

The eighth assignment is to the refusal of the court to charge that the plaintiff had not proved that the negligence of the defendant was the direct and proximate cause of the injuries complained of, and that, therefore, the verdict of the jury should be for the defendant. In refusing to so charge, the court said:

"I have very grave doubts upon that part of the case, but for the purpose of this case I have decided to leave the fact to you, the jury; and therefore I decline to charge, under the circumstances."

The question of proximate cause was thus brought prominently and specially to the attention of the jury, and was properly left to them for decision. The jury could not have misunderstood the instructions of the court, the whole tenor of which was to impress on their minds that the liability of the defendant must be directly consequent upon its negligence. The ninth assignment presents the same question of proximate cause, and requires no special notice.

The conclusion is that, on a careful review of the whole record, no reversible error has been found. The judgment of the circuit court is therefore affirmed.