## CUMBERLAND TELEPHONE AND TELEGRAPH COMPANY
### v. KRANZ.

[No. 7,244. Filed June 9, 1911.]

1. TRIAL.—*Special Findings.*—*Purpose.*—The purpose of a special finding is to set out the ultimate facts proved, and not conclusions therefrom, and, to authorize a recovery, such findings must contain every fact necessary thereto. p. 72.

2. NEGLIGENCE.—*Question of Law or Fact.*—Negligence is sometimes a question of fact, sometimes a question of law and sometimes a mixed question of law and fact; but where the facts are undisputed, or where a special finding is made, negligence becomes a question of law. p. 73.

3. NEGLIGENCE.—*Proximate Cause.*—*Question of Law or Fact.*— Where the facts are undisputed, what is the proximate cause of an injury is a question of law. p. 73.

4. TRIAL.—*Conclusions of Law.*—*Defects.*—*Correct Judgment.*— The failure correctly to state conclusions of law, where a correct judgment is rendered on the facts found, constitutes harmless error. p. 73.

5. TELEGRAPHS AND TELEPHONES.—*Suspending Uninsulated Telephone Wire over Trolley Wire.*—*Negligence.*—The maintenance of an uninsulated telephone wire over a trolley wire constitutes negligence. pp. 73, 75.

6. ELECTRICITY.—*Use of.*—*Care Required.*—Electricity is highly dangerous, and persons making use thereof are required to use care commensurate with the dangers thereof. p. 74.

7. TELEGRAPHS AND TELEPHONES.—*Electricity.*—*Injury to Animals on Private Grounds.*—Where a telephone company maintained an uninsulated wire over a trolley wire, and such telephone wire broke and fell on the trolley wire, thereby becoming charged with electricity and killing plaintiff's horses, the fact that such horses, at the time they were killed, were on private property, does not affect such company's liability, so long as they were there rightfully. p. 74.

8. TELEGRAPHS AND TELEPHONES.—*Maintenance of Telephone Wire over Trolley Wire.*—*Injuries to Animals.*—*Proximate Cause.*— The maintenance of an uninsulated telephone wire over a trolley wire, such telephone wire breaking during a storm and falling upon the trolley wire, thereby killing plaintiff's horses, constitutes the proximate cause of the death of such horses. p. 74.

9. NEGLIGENCE. — *Proximate Cause.* — *What is.* — The proximate cause of an injury or death is the decisive cause. p. 74.

10.  NEGLIGENCE.—*Contributory.*—*Burden of Proof.*—*Destruction of Property.*—In actions for the destruction of property by negligence, the burden of proving freedom from contributory negligence is upon the plaintiff.  p. 75.

11.  NEGLIGENCE.—*Contributory.*—*Freedom From.*—*Special Findings.*—*Telephone Wires.*—*Driving over.*—Special findings that defendant telephone company's broken wire, heavily charged with electricity, was lying upon the ground, which was covered with grass and weeds tending to obscure the wire, and that plaintiff's servant, who was competent and who, in a careful manner, drove plaintiff's team upon it, both horses being killed, sufficiently show freedom from contributory negligence.  p. 75.

12.  NEGLIGENCE.—*Proximate Cause.*—*Contributory Negligence.*—Where plaintiff shows that defendant's negligence was the proximate cause of the death of his two horses, and that plaintiff did not contribute thereto, he is entitled to recover.  p. 76.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Action by Leonard Kranz against the Cumberland Telephone and Telegraph Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*M. Z. Stannard* and *Jonas G. Howard,* for appellant.

*J. K. Marsh,* for appellee.

IBACH, J.—This was an action in tort brought by appellee to recover damages against appellant and the Louisville and Northern Railway and Lighting Company, for the alleged negligent killing of two horses, the property of appellee. Appellant owned and operated a telephone line. Its codefendant owned and operated an electric railway. During a windstorm appellant's telephone wire fell and rested in part on the railway company's trolley wire and in part on the ground, and by contact with said trolley wire the telephone wire became charged with an electric current. As the telephone wire was thus resting on the ground, charged with the current from the trolley wire, appellee's servant attempted to drive the horses across it, and they received an electric shock from the telephone wire, which killed them.

The case was tried by a jury, and a verdict returned in favor of defendant railway and lighting company, but

against defendant telephone company. Appellant's motion for a new trial was granted, and the issue between appellee and appellant was tried a second time by the court without a jury. The court made a special finding of facts and stated conclusions of law thereon.

It is assigned for reversal of the judgment that the court erred in each of its conclusions of law stated upon the special finding of facts.

We shall set out the substance of the special finding of facts, the twenty-fourth, twenty-fifth, twenty-seventh, twenty-eighth, twenty-ninth and thirtieth findings being set out in full.

The Louisville and Northern Railway and Lighting Company, hereinafter designated as the railway company, operated an electric railway in Clark county, Indiana. Appellee owned a tract of land adjacent to the main line of this railway, on which, prior to April, 1907, he established a cold-storage plant, located 1,300 feet west of the main line of the railway, which plant he was operating on July 11, 1907. Prior to April, 1907, he arranged with the railway company to build a switch from its main line to his storage plant, and agreed to convey to the company a strip of ground forty feet wide for a right of way, which right of way was surveyed by the railway company, and stakes were set along it. During April, 1907, appellant Cumberland Telephone and Telegraph Company, hereinafter designated as the telephone company, at plaintiff's request, constructed a branch telephone line leading to the cold-storage plant, and continued to operate this line until after July 11, 1907. In constructing this line the telephone company attached its wire to a telephone pole that stood north of the forty-foot strip of ground, and to a cherry tree that stood about seventy-five feet south of this strip, and to other trees south of the cherry tree, the distance between the telephone pole and the cherry tree being about one hundred twenty-five feet, and between the cherry tree and the next tree south

to which the wire was attached, about three hundred feet. The telephone wire extended transversely across the forty-foot strip of ground, and was suspended from seven to ten feet above the ground where it crossed, without support of any character between the pole and the cherry tree, in which condition it remained until changed by the railway company as hereinafter described. In May, 1907, appellee conveyed by deed, according to his agreement, the forty-foot strip of ground to the railway company for a right of way, and in June, 1907, that company began the construction of a switch, in pursuance of its agreement, and notified the telephone company to remove its wire at the point where it crossed the right of way, which the telephone company failed to do. In June, 1907, the railway company constructed the switch, and in so doing erected a line of trolley poles along its right of way, and strung upon these poles a trolley wire, at the height of twenty-five feet above the ground, and, without detaching the telephone wire from the telephone pole or the cherry tree, raised said wire to a point eighteen inches above the trolley wire, and attached it to the arm of one of the trolley poles. This wire was then twenty-six and one-half feet from the ground, eighteen inches above the trolley wire, and the two wires remained in such condition, with the knowledge of the two companies, until the telephone wire fell, as hereinafter described. At the point where the wires crossed neither was insulated, and no guard was placed about them to prevent the telephone wire from resting on the trolley wire, in the event of its falling. The wires could have been so guarded as to prevent such resting in such event, and could have been so insulated that an electric current transmitted through the trolley wire could not be communicated to the telephone wire, in case of its falling and resting on the trolley wire. In June, 1907, the railway company began to operate cars on the switch by electric power, transmitted through its said trolley wire at a current strength of 500 volts, and the cars were being

so operated on July 11, 1907, at the time appellee's horses were killed. At about 4 o'clock p.m., July 11, 1907, a windstorm occurred in the vicinity of the switch, cold-storage plant and telephone line. "(24) During said storm said branch telephone wire became detached from one of the trees located south of said cherry tree, and having become so detached became so slackened that one portion thereof rested on said trolley wire, and another portion thereof, which was between said cherry tree and the next tree south thereof, lay and rested upon the ground. (25) At the place where said portion of said branch telephone wire so rested on the ground, the ground was covered with a growth of grass and weeds, which tended to obscure it from the view of one driving over said place. (26) On July 11, 1907, plaintiff was the owner of two horses and a wagon, which horses were of the value of $—, and had in his employ a competent driver. (27) On said July 11, 1907, and after said storm had subsided, and while said branch telephone wire was so resting in part on said trolley wire and in part on the ground, and while said trolley wire was by said Louisville and Northern Railway and Lighting Company so charged with an electric current of 500 volts, and while plaintiff's said horses, * * * hitched to said wagon, were by plaintiff's said driver being carefully driven across said land from said cold-storage plant to a public highway, and across the place where said branch telephone wire was so lying upon the ground, said horses came in contact with that part of said branch telephone wire that was so lying upon the ground, and by reason thereof received an electric shock by which they were then and there instantly killed. (28) The electric shock, by reason of which said horses were killed, was the same that was so transmitted through said trolley wires by said Louisville and Northern Railway and Lighting Company, and from said trolley wire communicated to and transmitted through said branch telephone wire. (29) Said horses on said occasion were so driven by said driver

in a careful and prudent manner, and said injury to said horses, from which their death so resulted, arose without the fault or negligence of plaintiff. (30) By reason of the death of said horses plaintiff has sustained damages in the sum of $400, which sum is due and unpaid.'' ·

The court stated the following conclusions of law:

''(1)   Defendant Cumberland Telephone and Telegraph Company, by suffering its branch telephone wire to be and remain above the trolley wire of the Louisville and Northern Railway and Lighting Company, without being insulated or guarded, was guilty of negligence. (2)   The negligence of the Cumberland Telephone and Telegraph Company, in permitting its branch telephone wire to be and remain above the trolley wire of the Louisville and Northern Railway and Lighting Company without being insulated or guarded, and while said trolley wire was heavily charged with an electric current, was the proximate cause of the death of plaintiff's horses, and that by reason thereof plaintiff has sustained damages in the sum of $400. (3)   Plaintiff was not guilty of contributory negligence. (4)   Plaintiff's driver, who was in charge of plaintiff's horses at the time they were killed, was not guilty of contributory negligence.''

Appellant objects that the first conclusion of law is not supported by the finding of facts, and claims that the negligence of appellant should have been found as an inferential fact. To the second conclusion of law it makes a similar objection, urging that the findings should have stated as an inferential fact that the alleged negligent act was proximate cause of the injury

To find the ultimate facts of the case, and not conclusions of law or fact therefrom, is the province of a special finding.

1. But every fact necessary to plaintiff's recovery must be embraced within the special finding. Negligence is sometimes a question of fact, sometimes of law, sometimes a mixed question of law and fact. But where

the facts are undisputed, as where the jury have 2. agreed upon and returned a verdict setting forth the principal contested facts, or where the court has found the facts specially, it then becomes the province of the court to settle the question of negligence as a matter of law. *Conner* v. *Citizens St. R. Co.* (1886), 105 Ind. 62, 55 Am. Rep. 177; *Louisville, etc., R. Co.* v. *Roberts* (1897), 18 Ind. App. 538; *Lake Shore, etc., R. Co.* v. *Brown* (1908), 41 Ind. App. 435; *Cleveland, etc., R. Co.* v. *Haas* (1905), 35 Ind. App. 626; *Pittsburgh, etc., R. Co.* v. *Seivers* (1904), 162 Ind. 234.

Where the facts are undisputed, what constitutes a proximate or a remote cause of an injury is a question of law for the court. *Haskell & Barker Car Co.* v. 3. *Przezdziankowski* (1908), 170 Ind. 1, 14 L. R. A. (N. S.) 972, 127 Am. St. 352; *P. H. & F. M. Roots Co.* v. *Meeker* (1905), 165 Ind. 132.

If the court states an erroneous conclusion of law, or fails properly to state the conclusions of law, it is not available as error by an exception to the conclusions of law, if 4. a proper judgment has been rendered on the facts. If error has been committed in the conclusion of law, the rendering of a proper judgment on the facts makes this error harmless. *Krug* v. *Davis* (1885), 101 Ind. 75; *White* v. *Chicago, etc., R. Co.* (1890), 122 Ind. 317, 7 L. R. A. 257; *Nelson* v. *Cottingham* (1899), 152 Ind. 135; 2 Woollen, Trial Proc. §4350.

We shall now consider the facts found in the present case and determine whether on these facts appellee should recover. The negligence charged against appellant is 5. the maintenance of its wire suspended above the trolley wire, under the circumstances set forth above, without insulation or guard. Under the best authority we must hold appellant negligent. It knowingly allowed its wire to remain suspended at a very short distance from the

trolley wire carrying a powerful and deadly current of electricity, under such conditions that if the telephone wire should break, or become loosened—an occurrence likely to happen—it could scarcely fail to rest on the trolley wire, become charged with the current from that wire, and become a thing of menace and danger. Electricity is an

6. agency of the greatest danger, and of a secret, deadly character, and those persons who employ it must use care to prevent injury, proportionate to the dangerous character of the agency, thus imposing upon them a very high degree of care. The wire in the present case could easily have been guarded. It makes no difference that ap-

7. pellee's horses were on private property when killed, and not in a public highway, for an electric company is liable for injuries occasioned on private property by its negligence, if the person or animal injured had a right to be on such private property, and owes to any and all persons rightfully on private property the duty of maintaining its wires in a reasonably safe condition. *Central Union Tel. Co. v. Sokola* (1905), 34 Ind. App. 429.

The negligence of appellant in maintaining its wire unguarded in close proximity to the trolley wire, under the circumstances set out in the special findings, was the

8. proximate cause of the death of the horses. The proximate cause of an injury is the responsible cause, the cause which is the active, operative, continuing and natural source of the injury. *Pittsburgh, etc., R. Co. v. Co-*

9. *zatt* (1907), 39 Ind. App. 682. The proximate cause of an injury is the moving cause—the cause without which the injury would not have occurred, although subsequent events or agencies may have helped to bring about the result. The real test of what is a proximate cause, when there are intervening agencies, is whether the result is such as might reasonably have been expected as the consequence of the original negligence, and if it is such, the liability continues in spite of an intervening cause or causes.

29 Cyc. 499; *Central Union Tel. Co.* v. *Sokola, supra; Mize* v. *Rocky Mountain Bell Tel. Co.* (1909), 38 Mont. 521, 100 Pac. 971, 129 Am. St. 659. When the telephone company allowed its wire to remain suspended above the trolley wire without guard or insulation, as in the present case, it might reasonably expect that the wire might become loosened or broken, rest on the trolley wire, and become charged with electricity, and that injury to persons or animals who came in contact with the wire might result therefrom. Below we cite cases in which a telephone or telegraph company has been held liable for injuries caused by its broken or sagging wires, which had become dangerously charged with electricity by coming in contact with wires carrying a higher electric current. *Central Union Tel. Co.* v. *Sokola, supra; Mize* v. *Rocky Mountain Bell Tel. Co., supra; Western Union Tel. Co.* v. *State, ex rel.* (1896), 82 Md. 293, 33 Atl. 763, 31 L. R. A. 572, 51 Am. St. 464; *McKay & Roche* v. *Southern Bell Tel. Co.* (1895), 111 Ala. 337, 19 South. 695, 31 L. R. A. 589, 56 Am. St. 59; *City Electric St. R. Co.* v. *Conery* (1895), 61 Ark. 381, 33 S. W. 426, 31 L. R. A. 570, 54 Am. St. 262; *Ahern* v. *Oregon Tel. Co.* (1894), 24 Or. 276, 33 Pac. 403, 35 Pac. 549, 22 L. R. A. 635; *Henning* v. *Western Union Tel. Co.* (1890), 41 Fed. 864; *Western Union Tel. Co.* v. *Thorn* (1894), 64 Fed. 287, 12 C. C. A. 104.

We therefore conclude, on the facts found, that appellant was negligent, and that this negligence was the proximate cause of the death of appellee's horses.

Before appellee could recover, the burden was on him to prove his freedom from contributory negligence. The court found as facts that at the point where the loosened wire was resting on the ground the ground was covered with a growth of grass and weeds, which tended to obscure it from the view of one driving over the place, that the horses were being driven by a competent driver in a careful and prudent manner, and

that the injuries which resulted in their death arose without fault or negligence of appellee. This is a sufficient finding that appellee and his driver were free from contributory negligence.

It thus appears from the special finding of facts that appellant was negligent in maintaining its wire as it did, that this negligence was the proximate cause of the death of appellee's horses, and that appellee was not guilty of contributory negligence. On this state of facts the law is with appellee, and he should recover. As a proper judgment was rendered on the facts, and the conclusions of law were properly stated, the judgment is affirmed.