C.M. BOTTEMA, JR. *v.* PRODUCERS LIVESTOCK ASSOCIATION AND HAROLD E. ALLEN

[No. 1-976A163. Filed September 7, 1977.]

*J. V. Boles, Kendall, Stevenson & Lowry*, of Danville, *Michael S. Fischer, Hart & Bell*, of Vincennes, for appellant.

*John P. Price, Robert T. Thopy, Bingham Summers Welsh & Spilman*, of Indianapolis, *David L. Miller, Miller & Miller*, of Vincennes, for appellees.

LYBROOK, J. — On March 29, 1977, pursuant to our previous determination, remanding this cause with instructions, Hon. Ernest Tilly, Jr., Judge of the Knox Circuit Court, entered the following judgment which is final as to all parties and claims:

"The Court finds that the Defendant, Harold E. Allen, should be jointly and severally liable with the Defendant, Producers Livestock Association, for the sum of Four Thousand Five Hundred Dollars ($4,500.00), as set forth in the judgment herein in favor of the Plaintiff and against the Defendant, Producers Livestock Association, and the Court further finds that a judgment should be rendered herein against the Defendant, Harold E. Allen, so as to give the Plaintiff, C.M. Bottema, Jr., a judgment in the total sum of Four Thousand Five Hundred Dollars ($4,500.00), with Producers Livestock Association and Harold E. Allen, jointly liable. . . . It is therefore ordered, adjudged and decreed that the Plaintiff, C.M. Bottema, Jr., recover of and from the Defendant, Harold E. Allen, jointly and severally with

the Defendant, Producers Livestock Association, the total sum of Four Thousand Five Hundred Dollars ($4,500.00)."

C.M. Bottema, Jr., appeals from this trial court determination in his favor and raises the following issues for our review:

(1) Who is liable where a party has properly perfected his security interest in livestock and the livestock is taken by a broker and sold at a private sale through an auction barn without the authorization of the secured party?

(2) What is the measure of damages where a party has properly perfected his security interest in livestock and the livestock is taken by a broker and sold at private sales through an auction barn without the authorization of the secured party?

(3) What is the secured party's burden of proof where the secured party has properly perfected his security interest in livestock and the livestock is taken by a broker and sold at private sales through an auction barn without the authorization of the secured party?

The facts most relevant to these issues reveal that on June 16, 1972, Bottema sold to Mr. John O'Neal, an individual not a party to this lawsuit, 65 angus, shorthorn and hereford cows accompanied with 63 calves, together with cows of mixed breed with seven calves. To finance this transaction O'Neal signed a promissory note for $23,650 representing the purchase price of the cattle and calves. Bottema signed as guarantor. On the same date these two parties also entered into a security agreement and O'Neal, as debtor, signed a financing statement covering the cattle. The financing statement, showing Bottema as a secured party, was recorded on July 5, 1972, with the recorder of Martin County. Pursuant to the sales agreement Bottema sent the cattle to O'Neal's Martin County farm.

During the summer of 1972, O'Neal also purchased cattle from Producers Livestock Association (Producers). Producers is an auction market in the business of buying and selling cattle. Harold E. Allen is the manager of Producers. Allen and Producers were the defendants below and are appellees on this appeal.

On September 19, 1972, Producers also filed a financing statement in Martin County. This agreement also listed O'Neal as the

debtor and included the cattle that O'Neal purchased from Producers as the collateral. O'Neal had placed the cattle that he purchased from Producers on a couple of his farms in Illinois. At the time Producers filed the financing statement apparently none of the cattle which O'Neal had purchased from them were then on O'Neal's Martin County farm with the cattle O'Neal had purchased from Bottema.

The testimony given at trial is in conflict concerning the next sequence of events. A portion of the evidence indicates that the cattle purchased from Bottema and originally placed on O'Neal's Martin County Farm were transported from that farm and intermingled with the livestock which O'Neal had purchased from Producers. Other evidence categorically denies that this occurred.

In early December, 1972, Allen advised O'Neal that market prices were at such a level as to make it advantageous for him to sell some of his cattle. O'Neal transported a portion of his cattle from his Illinois farms to Producers' place of business. Some of the cattle transported to Producers' place of business were deemed too light in weight to sell at that time. These cows were taken to O'Neal's Martin County farm for the winter for fattening.

Later in December 1972, Allen visited O'Neal's Martin County farm to inspect the cattle. Allen testified that the cattle on the farm were generally not healthy. In fact, an uncertain number were dead. Allen informed O'Neal of this and recommended that O'Neal sell the remainder of the cattle before any more died.

In January of 1973, the remaining cattle on O'Neal's Martin County farm were trucked to Producers' place of business. Seven cows were sold at Producers regular Wednesday auction. Fifty-eight calves were sold at a private sale for approximately $80 a head. As a result of this sale Bottema initiated this suit alleging that he had a perfected security interest in the livestock and the livestock was disposed of without account to him.

## I.

The first issue for our consideration is: "Who is liable where a party has properly perfected his security interest in livestock

and the livestock is taken by a broker and sold at a private sale through an auction barn without the authorization of the secured party?"

On March 10, 1976, the court entered the following judgment:

"The Court having heretofore taken ruling and judgment herein under advisement and the Court being now duly advised, finds for the Plaintiff and against the Defendant, Producers Livestock Association, on Plaintiff's Complaint herein and the Court finds that Plaintiff, C. M. Bottema, Jr., should recover of and from the Defendant, Producers Livestock Association the sum of four thousand five hundred dollars ($4,500.00).

It is now ordered, adjudged and decreed that Plaintiff, C.M. Bottema, Jr., recover of and from the Defendant, Producers Livestock Association, the sum of four thousand five hundred dollars ($4,500.00).

Costs herein are assessed against the Defendant, Producers Livestock Association."

In a previous opinion we determined that the above judgment was not final as to all claims and all parties and therefore remanded this cause with instructions. On March 29, 1977, the trial court determined that both Producers Livestock Association and Harold E. Allen were jointly liable to C.M. Bottema.[1] Due to the authority discussed in the previous footnote and the trial court's amended judgment being consistent with the authority we determine that it is unnecessary to discuss this issue further.

## II. & III.

The second and third issues raised by appellant shall be discussed together to resolve this controversy. These issues are:

"(2) Where is the measure of damages where a party has properly perfected his security interest in livestock and the

---

[1] Ronald K. Carpenter, *Farm Financing Under the Uniform Commercial Code*, 44 North Dakota Law Review 553 (1968). The above mentioned Law Review states: "If secured cattle were sold at an auction without the secured party's consent a buyer would not only take them subject to the security interest, *but the secured party would have a cause of action for conversion against the auctioneer and the marketing agency."* United States v. Sommerville, 324 F.2d 712 (1962); *Clovis National Bank v. Thomas,* 77 N.M. 554, 425 P.2d 726 (1967).

livestock is taken by a broker and sold at private sales through an auction barn without the authorization of the secured party.

(3) What is the secured party's burden of proof where the secured party has properly perfected his security interest in livestock and the livestock is taken by a broker and sold at private sale through an auction barn without the authorization of the secured party."

First, we have determined the secured party would have a cause of action for conversion against the auctioneer and the marketing agency. [See Footnote 1 and see also *U.S. v. Topeka Livestock Auction*, 392 F. Supp. 944 (N.D. Ind. 1975)]. It is well settled in Indiana that the ordinary measure of damages in an action for conversion is the value of the property converted at the time and place of conversion, with interest. 6 I.L.E., *Conversion* § 21. Appellant maintains that the measure of damages for conversion of livestock by an auctioneer and broker is the fair market value of the property at the time of conversion, *plus interest from the date of conversion.* Appellees agree that the fair market value of the property at the time of the conversion would be the measure of damages but disagree with Bottema's contention that interest be included in the present case. However, in light of our disposition of this case, it is unnecessary that we discuss interest at this time.

All parties to this appeal agree that the basic measure of damages would be the fair market value of the property converted at the time and place of the conversion. The issue we must resolve is whether the trial court's judgment can be sustained as being the fair market value of the livestock converted. The judge in the case at bar apparently determined that the amount of money that Producers received from the private sale of the livestock would be the fair market value of the livestock. We do not agree. While a sale in an open market may be indicative of the fair market value of goods, a private sale such as the one utilized in the case at bar would not, in our opinion, be indicative of the fair market value of the livestock.

The case of *Keenan Hotel Co. v. Funk* (1931), 93 Ind. App. 677, 177 N.E. 364, while not factually identical is helpful by analogy in resolving the present case. That case involves a bailment situation where bailor left his car at a parking garage which was the bailee. The court, quoting from *Miles v. International Hotel Co.* (1919), 289 Ill. 320, 124 N.E. 599 held:

> " 'The weight of modern authority holds the rule to be that where the bailor has shown that the goods were recieved in good condition by the bailee and were not returned to the bailor on demand the bailor has made out a case of *prima facie* negligence against the bailee, and the bailee must show that the loss or damage was caused without his fault. . . . *The effect of this rule is, not to shift the burden of proof from plaintiff to defendant but simply the burden of proceeding.*' And such *prima facie* case is not overcome by showing on the part of the bailee that the goods have been burned, or otherwise destroyed or stolen. *Before such prima facie case can be said to be overcome, the bailee must further produce evidence tending to prove that the loss, damage or theft was occasioned without his fault.* This rule has been applied to garage keepers who failed to return automobiles on demand." (Emphasis added.)

The rationale for shifting the burden of proceeding onto the person having possession of the property is sound. The practical question is how can the plaintiff, the bailor in *Keenan Hotel Co., supra,* and Bottema, the secured party in the present case, prove either what happened to the goods or the value of the goods when such items were not in his possession. Once a *prima facie* case is made out against the defendant, the bailee in *Kennan Hotel Co.* and the converter here, the burden of proceeding with evidence shifts to that party. In the case at bar Bottema, the secured party, successfully made out a case of *prima facie* conversion against Allen and Producers, the auctioneer and auction barn.

The case of *Kavanaugh et al. v. Taylor* (1891), 2 Ind. App. 502, 28 N.E. 553 illuminates this subject. In that case the facts are very similar to those in the case at bar. The property converted and sold was a train car load of potatoes. There was some evidence that the potatoes were rotten. The court commented about the issue as follows:

"But, as the court below properly held, *the burden rested heavily upon the defendants* to show that the potatoes were damaged. The Plaintiff had no opportunity to inspect these potatoes when they were taken from him against his will. There was no one upon the ground who watched his interest or who observed for him either their condition or quantity." (Emphasis added.)

It is apparent that the burden of proceeding has shifted to the converters and they must prove that the livestock sold did not include the cattle secured in Bottema's security agreement and that they were malnourished, unhealthy, or dead, to justify such a reduced value.

A search of the record reveals that the only evidence relevant to this issue introduced by defendants was the price for the livestock at the private sale and some testimony that an uncertain number of cows on O'Neal's Martin County farm were dead and the remainder malnourished. This evidence is insufficient to prove the fair market value of the converted livestock.

Fair market value has been defined as follows:

"Under such rule, market price means the fair value as between one who desires but is not compelled to buy, and one who is willing but not compelled to sell, not what could be obtained for like property *under peculiar circumstances* where a price greater or less than its fair price could be obtained, nor a speculative value, nor a price obtained in a manipulated or stimulated market, nor a value obtained from the necessity of the seller to sell or the purchaser to buy, *but its value at a sale which a prudent owner would make if he had the power of election as to the time and terms.*" (Emphasis added.) *Weed v. Lyons Petroleum Co.*, 294 F. 725 (D.C. Del. 1923).

\* \* \*

" '. . . The Court defined market value as: \* \* \* the sum which, considering all the circumstances — uncertainties of \* \* \* war and the rest — probably could have been obtained for an assignment of the contract and claimants rights thereunder; that is, the sums that would in all probabilities result from fair negotiations between an *owner* who is willing to sell and a purchaser who desires to buy.' " (Emphasis added.) *DeLa Rama*

*Steamship Co. v. U.S.*, 92 F. Supp. 243 (S.D. N.Y. 1950), quoting *Brooks v. U.S.* (1924), 265 U.S. 106.

\* \* \*

"Assuming no present day-by-day market such as a stock market, *daily livestock quotation,* or the like, there is no valid reason why a *public* auction value should not be accepted as a true market value. In fact, it can be argued that such a valuation is fairer than any other in an unusual type of case such as this." (Emphasis added.) *Fehlhaber v. Indian Trails, Inc.*, 286 F. Supp. 499. (D.C. Del. 1968).

It appears to us that the sale of the cattle in the case at bar was not a sufficient sale from which the fair market value could be discerned. The sale involved was a private sale, not an auction. There was a buyer and a seller. The seller was not the owner of the cattle. It could be argued that we are merely weighing the evidence and determining that the evidence was insufficient to establish fair market value; however, we determine that the value received for the livestock from this sale was not an indication of fair market value as a matter of law in light of the fact that the converter was not the owner of the livestock and did not represent the best interests of the owner. We do not believe the value received by the converter at this sale represented the value which a prudent owner would willingly accept if he had the power of selection as to the time and terms of sale. Therefore, a private sale without notice to the owner or the secured party, as the one in the present case, is not determinative of fair market value.

We determine that the trial court was in error when it awarded damages in the sum of $4,500 to Bottema. It is readily apparent that the trial court took this figure from defendants' evidence as to the proceeds of the sale. This must be so because the figure of $4,500 appears at no place in the evidence excepting the evidence of the sale price. Furthermore, there was no evidence in the record tending to establish $4,500 was the fair market value of the converted cattle.

We therefore remand this cause for a proper determination of damages based upon the fair market value of the livestock on the

date of conversion, together with such interest as the trial court finds appropriate.

Reversed and remanded.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE—Reported at 366 N.E.2d 1189.