**Arthur L. SPENCER and Robert Spencer, d/b/a Spencer Auto Sales, Defendants–Appellants,**

**v.**

**George E. GLOVER, d/b/a Glover Auto Sales, Plaintiff–Appellee.**

**No. 1–580A115.**

Court of Appeals of Indiana, First District.

Dec. 2, 1980.
Rehearing Denied Jan. 12, 1981.

Steven R. Reed, Cooper, Cox, Jacobs & Reed, Madison, for defendants–appellants.

Kerry L. Thompson, Everitt, Houston & Thompson, Scottsburg, for plaintiff–appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Defendants–appellants Arthur L. Spencer and Robert Spencer, d/b/a Spencer Auto Sales, (Spencers) appeal the judgment of the Scott Circuit Court awarding damages to plaintiff–appellee George E. Glover, d/b/a Glover Auto Sales, (Glover) for the value of a motor vehicle which was stolen while bailed to Spencers.

We affirm.

### STATEMENT OF THE FACTS

The evidence most favorable to the judgment is as follows. On June 6, 1978, Glover agreed to purchase a truck from Spencers at a price of $5,500. Under the sales agreement Spencers were obligated to install a winch on the vehicle. Glover paid $5,000 and took possession; the balance was to become due upon installation of the winch.

Sometime later Robert Spencer came to Glover and took possession of the truck for the purpose of taking it to Flat Rock, Michigan, to have the winch installed. At that time a conversation took place between Glover and Robert Spencer. Glover's version of the conversation is as follows:

"Q. Okay. Was anything said at the time Bob came to pick the wrecker up regarding when it would be fixed and how?

A. Well, he said it would be a week or so and that he would take good care of it and if anything happened to it that he would, you know, stand behind it and take care of it.

Q. Was anything said by Bob about redelivering it in good condition?

A. Yea, he said he would bring it back, just like, you know, just like he got it."

Robert Spencer presented the following version of the conversation:

"Q. Did you say anything to Ed then about that if anything happens to it, you would make it good?

A. I can't recall saying anything like that. But I'm sure we had that understanding, you know, about the business we had taken care of before on the truck deal.

Q. Had you operated in that manner before or how would you have this understanding?

A. Well, for one thing, I have known Ed for a while and maybe I wouldn't have to say that with him.

Q. Well, was there any agreement between the two of you made regarding that you would redeliver the wrecker to him in as good condition as you took it from him?

A. Yes, I think there was something said about that if I remember right.

Q. Where did that conversation take place—at Ed's?

A. Yes.

Q. When you picked it up?

A. Yes, that morning.

Q. O.K. That's all.

A. I think I remember telling him not to worry about his truck. Something like that.

Q. O.K. Thank you."

Robert Spencer drove the truck to Flat Rock, Michigan, and parked it in a well-lighted area in front of a reputable motel which was adjacent to other businesses. During the night the truck was stolen. Spencer was unable to recall whether he locked the truck, but he did recall that he kept the key in his possession.

When Spencers failed to return his truck, Glover commenced this action. The complaint was in two counts: In count I he proceeded upon a claim of negligence on the part of Spencers, as bailees, which was the proximate cause of the loss of the truck; in count II he proceeded with a theory of absolute liability under the contract of bailment. The trial court entered judgment for Glover for the value of the truck without special findings of fact or conclusions of law.

## ISSUES

Spencers assign three errors, namely, that the decision of the court is (1) not supported by sufficient evidence, (2) contrary to law, and (3) contrary to the evidence. All of these assignments of error involve the same questions and can be discussed together. With regard to count I Spencer argues that a bailee is liable only for those damages to bailed property which proximately result from the bailee's negligence. Spencers contend the evidence shows they were free from any fault, and therefore the decision of the court erroneously imposed absolute liability upon them. With regard to count II, Spencers argue there was no legally sufficient agreement between the parties imposing absolute liability.

## DISCUSSION AND DECISION

On appeal of cases tried before the court we will not disturb the judgment unless it is shown to be clearly erroneous. The judgment of the trial court will be affirmed if it is sustainable on any basis. *Indiana Motorcycle Association v. Hudson*, (1980) Ind. App., 399 N.E.2d 775. We will neither weigh the evidence nor determine the credibility of the witnesses, but will look only to the evidence and reasonable inferences therefrom which tend to support the trial court's decision. *Bureau of Motor Vehicles v. Pentecostal House of Prayer, Inc.*, (1978) Ind., 380 N.E.2d 1225. In the case at bar, we need not discuss the merits of count I since the decision of the trial court can be affirmed on the merits of count II, based in contract.

The parties agree the transaction created a bailment. The general rule as to the liability of a bailee for the loss or damage of bailed property was stated in *Hainey v. Zink*, (1979) Ind.App., 394 N.E.2d 238, 241, as follows:

"It is the law in this state that in an action based upon breach of a bailment contract, a showing that the goods were received by the bailee in good condition and that they were in damaged condition when returned to the bailor, gives rise to an inference that the damage was caused through the fault or neglect of the bailee. Such an occurrence places upon the bailee the burden of producing evidence to show that the damage was caused without fault or neglect on his part. *Keenan Hotel Company v. Funk*, (1931) 93 Ind. App. 677, 177 N.E. 364. *See also Bottema v. Producers Livestock Association*, (1977) Ind.App., 366 N.E.2d 1189."

However, this rule may be altered by contract. Two Indiana cases exist in which the court imposed liability regardless of fault where the bailee had agreed to return the goods in as good a condition as he had received them. The first is *Morrow, Inc. v. Paugh*, (1950) 120 Ind.App. 458, 91 N.E.2d 858, a case in which a truck lease contained a provision whereby the lessee agreed to return the truck to the lessor "in as good condition as when received, ordinary wear and tear excepted." The truck was destroyed by collision without fault on the part of the lessee. The court held that the rights and liabilities of the parties were to be determined by the terms of the contract, citing in support thereof 6 Am.Jur. *Bailments* § 183 (1938). The court quoted 12 Am.Jur. *Contracts* § 336 (1938) at 935–936 for the following proposition:

" ' "[W]here one, at the time of making his contract, must have known or could have reasonably anticipated, and in his contract could have guarded against, the possible happening of the event causing the impossibility of his performance, and nevertheless he makes an unqualified undertaking to perform, he must do so or pay damages for his failure." ' "

120 Ind.App. at 464–465, 91 N.E.2d 858. The court then, in ruling for the lessor, concluded:

"Surely it cannot be asserted it was unreasonable to assume the parties had in mind that in the performance of this contract such an accident might happen. Therefore, the accident by which appel-

lee's vehicle was destroyed did not relieve appellant of the obligation it assumed by reason of the unequivocal provision of Clause 4 of the contract."

120 Ind.App. at 465, 91 N.E.2d 858.

In *Light v. Lend Lease Transportation Co.*, (1959) 129 Ind.App. 234, 156 N.E.2d 94, a leased vehicle was stolen while in the possession of the lessee. The lease contained a provision similar to that in *Morrow, supra*; the lessor based his complaint upon the bailment contract, without regard to fault. Following *Morrow, supra*, the court held that where the contract of bailment contained an enlarging provision to restore possession of the vehicle to the lessor, the lessee was not relieved of his obligation although the vehicle was stolen by a third party without fault on the lessee's part.

Spencer attempts to distinguish *Morrow, supra*, and *Light, supra*, on the basis that the bailment contracts were in writing. We disagree. In *Weddington v. Stolkin*, (1952) 122 Ind.App. 670, 675, 106 N.E.2d 239, the court quoted with approval 6 Am.Jur. *Bailments* § 67 (1938) at 223–224:

" 'In order to establish a bailment there must ordinarily be an acceptance of the article bailed, it being necessary to show either an express contract to take the article and later redeliver it, *or circumstances from which such a contract can be implied*; . . .' " (Emphasis added.)

The validity of a bailment is governed by the rules of validity of contracts generally. 8 C.J.S. *Bailments* § 11 (1962). A bailment is a delivery of goods by an owner to another for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled, the goods shall be redelivered to the owner. *Finch v. McClellan*, (1921) 77 Ind.App. 533, 131 N.E. 236. Subject to statutory regulations, a bailment may be written or oral, and no formal language is required for its creation. The contract may be express or implied. 8 C.J.S. *Bailments* § 22 (1962).

We are of the opinion that sufficient evidence was presented from which the trial court could find that the parties had entered into a bailment contract which

unequivocally obligated Spencers to return the truck in the same condition as they received it, and thus enlarged upon their liabilities under the general rule stated in *Hainey, supra.* As in *Light, supra,* the possibility of the truck being stolen was reasonably foreseeable. Having entered into such an agreement, Spencers are bound by the obligations thereby created.

To rule otherwise would strain the law of contracts. At the time of entering into a bailment contract, it may be that, absent absolute guarantees, a bailor may be unwilling to expose his property to loss or damage from any cause. At the same time, the bailee, for the purpose of effecting the bailment, may be willing to extend such guarantees as will satisfy the bailor. If they agree to some mutually satisfactory guaranty provision in their bailment contract, we see no reason why such an agreement should not be enforced.

For the above reasons, the decision of the trial court is affirmed.

Affirmed.

ROBERTSON, P. J., and RATLIFF, J., concur.