Muriel **STUBBS** as Special Administratrix of the Estate of George Stubbs, Stubbs Aviation Service, Speedway Airport, Indianapolis Metropolitan Airport Authority, a Municipal Corporation, Appellants (Defendants Below),

v.

Ralph W. **HOOK**, Jr., Appellee (Plaintiff Below).

No. 1–1183 A 349.

Court of Appeals of Indiana, First District.

Aug. 13, 1984.

Rehearing Denied Oct. 11, 1984.

Peter G. Tamulonis, Richard A. Young, Kightlinger, Young, Gray & De Trude, Indianapolis, for appellants.

Arthur H. Northrup, Indianapolis, Lind, Deckard & O'Brien, Danville, for appellee.

ROBERTSON, Judge.

Muriel Stubbs as administratrix of her husband's estate, Stubbs Aviation Service, Speedway Airport, and the Indianapolis Metropolitan Airport Authority appeal an adverse judgment rendered by the court which found them liable for damage to an airplane owned by Ralph Hook.

George Stubbs, deceased, did business at the Speedway Airport as Stubbs Aviation Service; Speedway Airport operates under the supervision of the Indianapolis Metropolitan Airport Authority. Hook owned a Piper Cherokee airplane and rented a tie-down space from Stubbs for $180.00 per year in 1979 and 1980. In July, 1979, the airplane was given an annual inspection and determined to be airworthy. Thereafter, Hook and a friend flew the airplane as late as September, 1979. On December 3, 1979, Hook went to Stubb's office to pay his fee for 1980 and was told his airplane had been damaged two or three weeks earlier.

The damage was located on the upper part of the right wing and on the engine cowling. In Hook's opinion and the opinion of an airplane dealer, who was called as a witness by the defendants, the damage was caused by a ground vehicle.

The airplane was parked in a space designated by Stubbs and located in the second strip of parking spaces at the end of a 2,500 foot grass runway. Stubbs furnished the tie-down equipment. It consisted of brackets set in the ground linked to chains with manual fasteners that could be opened by anyone. Stubbs possessed a set of keys for the airplane and moved it occasionally by using the key and manually. Hook and his friend retained keys to the airplane. It was not necessary for pilots to check in with the office on take off or landing.

The trial court made specific findings of fact and conclusions of law. The court concluded Stubbs and Hook had made a bailment contract. Relying on this conclusion and applying the doctrine of *res ipsa loquitur*, the trial court found the defendants liable for the unexplained damage to the airplane. Because of provisions in a lease agreement between Stubbs and the airport authority concerning the location of tie-down space and the apportionment of rental fees, the trial court held the airport authority liable.

On appeal, the defendants argue the judgment is contrary to law alleging: 1) that the doctrine of *res ipsa loquitur* is not applicable absent evidence that the defendants controlled the instrumentality causing the damage; 2) the contract between Stubbs and Hook was not a bailment contract because Stubbs did not have exclusive possession and control of the airplane; 3) the Indianapolis Metropolitan Airport Authority should not be liable to Hook because it did not participate in managing the tie-down facilities; and 4) that the trial court erred by allowing witnesses to speculate about the cause of the damage.

We reverse because Stubbs did not have exclusive possession and control of the airplane and therefore, a bailment was not created.

▬ In cases tried by the court, we may not reverse the trial court's decision unless it is clearly erroneous and we give due regard to the trial court's opportunity to judge the credibility of witnesses. *Litzelswope v. Mitchell*, (1983) Ind.App., 451 N.E.2d 366. Ind.Rules of Trial Procedure, Trial Rule 52(A). When a judgment is attacked as being contrary to law, we neither consider credibility of witnesses nor weigh the evidence. Rather, we look solely to the evidence most favorable to the judgment, together with all reasonable inferences therefrom, and it is only when this evidence is without conflict and leads to but one conclusion and the trial court reached a contrary conclusion that we will reverse that decision as being contrary to law. *Dominguez v. Gallmeyer*, (1980) Ind.App., 402 N.E.2d 1295, *trans. denied.*

▬ A bailment is an agreement, either express or implied, that one person will entrust personal property to another for a specific purpose and that when the purpose is accomplished the bailee will return the property or the bailor will reclaim it. 8 Am.Jur.2d (Rev.) § 2 (1980). In an action based upon breach of a bailment contract, proof that the property was re-

ceived by the bailee in good condition and was damaged prior to being returned to the bailor raises an inference the bailee was negligent. *Spencer v. Glover,* (1980) Ind. App., 412 N.E.2d 870. This rule is a recognition of the bailee's duty to exercise reasonable care to protect the bailor's property.[1] *Central Transport, Inc. v. Great Dane Trailers, Inc.,* (1981) Ind.App., 423 N.E.2d 675.

▬ In order for a bailment to exist, the bailed property must be delivered into the bailee's exclusive possession and accepted by the bailee. This point was discussed in *Weddington v. Stolkin,* (1952) 122 Ind. App. 670, 675, 106 N.E.2d 239, 241–242.

It is essential to the creation of the relation of bailor and bailee that there be a delivery of the property to the bailee. In order to constitute a sufficient delivery in any given case, it is the general rule that there must be such a full transfer, either actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and give to the bailee, for the time being, the sole custody and control thereof.

We have not found any Indiana cases that apply this rule to factual situations analogous to the case at bar. Hook cites several cases from other jurisdictions for the proposition that rental of a tie-down space creates a bailment. In some of these cases, the parties agreed a bailment existed, *Naxera v. Wathan,* (1968) Iowa, 159 N.W.2d 513, *Alamo Airways, Inc. v. Benom,* (1962) 78 Nev. 384, 374 P.3d 684, and in others, the possession issue was not raised, *Meyer v. Moore,* (1958) Okla.Supr., 329 P.2d 676, therefore they are not applicable to the case at bar. However, a South Dakota case is exactly on point with the case before us.

In *Nelson v. Schroeder Aerosports, Inc.,* (1979) S.D., 280 N.W.2d 107 the owner of an airplane sought to recover damages his

---

1. Of course the parties may agree to a higher standard of care including absolute liability.

*e.g., Spencer v. Glover, supra.*

plane sustained in a storm. He had rented a tie-down space from the defendant-airport operator. The plaintiff retained the keys to his airplane and allowed a third party access to it. Apparently, the plaintiff's case was predicated on the theory that the defendant negligently failed to properly anchor the aircraft prior to the storm, although the tie-downs were secure. The trial court directed a verdict for the defendant, which was affirmed on appeal, on the grounds that a bailment did not exist because the plaintiff had not relinquished exclusive control of the aircraft.

The only factual distinction between *Nelson* and Hook's case is that Stubbs had a set of keys for the airplane. Nevertheless, Hook retained keys to the aircraft and allowed a third party access to it. Therefore, the trial court erroneously concluded a bailment existed that put the burden of proof and ultimately the responsibility for the damage on the defendants. *See also, State ex rel. Mather v. Carnes,* (1977) Mo.App., 551 S.W.2d 272.

Hook argues the judgment can be sustained on any of three theories: bailment, *res ipsa loquitur* or contract. However, the trial court did not base its decision on separate alternative theories. The duty to safely store the airplane and the burden of explaining the damage are interwoven with the finding that a bailment existed. Hook did not introduce evidence he had contracted for safe storage. He gave his opinion that he expected a safe place, but he did not show that Stubbs made representations about storage conditions.

Furthermore, the doctrine of *res ipsa loquitur* is a mechanism for proving breach of a duty, once the duty has been established. The trial court went from its conclusion that a bailment existed, with the object being safe storage, to the conclusion that the airport had a duty to control ground traffic to effectuate safe storage. The trial court equated control of the ground traffic and the airport as a whole with the control of an instrumentality necessary for the application of *res ipsa loquitur. Bituminous, Etc. v. Culligan Fyr-*

*protexion, Inc.,* (1982) Ind.App., 437 N.E.2d 1360 (the case contains a good explanation of control of an instrumentality.) Absent a bailment, Stubbs did not have a duty to provide safe storage.

Judgment reversed.

NEAL, P.J., and RATLIFF, J., concur.