CARL SUBLER TRUCKING, INC.,
Plaintiff-Appellant,

v.

Frank W. SPLITTORFF, and Industrial
Transport Services, Inc.,
Defendant-Appellees.

No. 1–1184A288.

Court of Appeals of Indiana,
First District.

Aug. 28, 1985.

Ross Rudolph, Fine, Hatfield, Sparrenberger & Fine, Evansville, for plaintiff-appellant.

Brian K. Carroll, Johnson, Carroll & Griffith, Evansville, for defendants-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Carl Subler Trucking, Inc. (Subler), appeals a set-off judgment rendered by the Vanderburgh Circuit Court without jury wherein defendant-appellees, Frank W. Splittorff (Splittorff) and Industrial Transport Services, Inc. (Industrial), recovered on their counterclaim for damages incurred and arising out of plaintiff's amended complaint based on negligence, bailment and contract indemnity.

We affirm.

## STATEMENT OF THE FACTS

On April 28, 1983, Industrial trip leased a tractor and semitrailer, together with its driver, to Subler. The purpose was to transport a cargo of sugar from Gramercy, Louisiana to Evansville, Indiana, on behalf of shipper Colonial Sugars, a customer of Subler. Subler possessed Interstate Commerce Commission (I.C.C.) permits, and Industrial did not. The 42,000 pound cargo, when added to the weight of the vehicle, created a gross weight of 70,000 pounds. It was loaded on the same day and in good condition in paper sacks. The driver, Malcolm Albert Zoll, drove the tractor, trailer and cargo to Evansville where the cargo was destined for delivery to two firms, Creasey and Central. Zoll arrived in Evansville on Friday afternoon, April 29. However, Creasey, whose portion of the cargo was located in the rear of the trailer and would have to be unloaded first, would not accept delivery because it was past 1:00 o'clock p.m. Unable to unload Central's cargo as well, Zoll, who was required to call Subler every 24 hours, called Subler and explained that the cargo could not be unloaded until Monday. Subler officials stated that this was all right and that Zoll need not call on Saturday or Sunday. Zoll drove the tractor, trailer and cargo to Industrial's terminal in Evansville and parked it. Pursuant to instructions and because the tractor needed service, Zoll pulled the pin on the fifth wheel and raised the tractor on its legs, called landing gears, which were appended near the front of the tractor and had large square shoes on their bases. Without unhooking the air hoses or electrical conduits, Zoll also pulled the tractor up the necessary few inches which would permit the service to be performed. Being finished with his work week, Zoll went home at 4:00 or 5:00 o'clock p.m.

The surface of the terminal in that parking area was blacktop over a thick pad of concrete. Zoll and his superior, Splittorff, testified that under those conditions, they never put blocks or pads under the landing gears and had never seen it done more than once or twice. Plaintiff's officers testified that it was customary in the industry to do so. At approximately 6:00 o'clock p.m., the trailer fell over on its left side. The immediate cause was that the left landing gear had broken through the surface, thereby causing the trailer to tilt and fall. Heavy rains had fallen in the area in the previous months. An examination of the hole revealed a large cavity several cubic feet in size beneath the concrete pad which contained water. Breaks radiated from the hole which was punctured by the landing gear. This evidence is corroborated by photographs. Industrial did not own the premises, but had leased it and commenced business there in 1982, the year before. Though admitting they had made no examination of the subsurface for holes, drains, lines or installations, Industrial's officers had no notice of any defects. This parking area was designated as a parking area on the lease. Prior to this incident, Splittorff

testified that he had never seen water over the parking area.

Splittorff called Subler immediately and talked to one David Frame. After examinations were made, Frame told him to wait until morning and that someone would get in touch with him. That night, more heavy rains fell and damaged some of the sugar. At 9:00 o'clock a.m. on Saturday, an adjuster, Gary Adams, appeared at the accident, and both he and Splittorff called one Jim Galike of Subler. At the direction of Subler's agents, who agreed to pay, machines and men were assembled by Splittorff to salvage the sugar, right the trailer and store the undamaged sugar in Industrial's warehouse. In a disagreement over who would pay the damage and the expenses, Industrial refused to release the sugar.

This action was commenced against Industrial by Subler initially for replevin. Subler later amended its complaint to claim expenses, attorney fees and indemnity for the damage to the sugar which Subler was required to pay Colonial. Industrial counterclaimed for (1) $1,600.00 for storage, labor and the expense of salvage; (2) $1,700.00 for damage to the parking lot; (3) $1,450.00 for damage to the trailer; and (4) $900.00 for loss of use of the trailer. The trial court found (1) in its conclusion of law number three, that the $3,730.82 of damage to the sugar, which was paid by Subler to Colonial, should be deducted from the amount Subler agreed to pay Industrial pursuant to paragraph three of the lease; (2) that Subler had no right to indemnity; and (3) that Industrial was entitled to recover rental for a forklift—$125.00; a loader—$360.00; and $210.00 for labor; totalling $695.00.

## ISSUES

Subler presents three issues on appeal, which, restated by us, are as follows:

I. The court erred in failing to find that Industrial, as bailee, failed to rebut the presumption of negligence because of damage to bailed goods.

II. The court erred in failing to apply the indemnity clause in the trip lease.

III. The court erred in granting Industrial's counterclaim.

## DISCUSSION AND DECISION

Issue I. *Bailment.*

■ Subler assumes, without any discussion, that a bailment relationship existed wherein Industrial was the bailee of the sugar and was bound by the law of bailment relative to the damage to the bailed goods. The rule was stated in *Spencer v. Glover*, (1980) Ind.App., 412 N.E.2d 870.

"It is the law in this state that in an action based upon breach of a bailment contract, a showing that the goods were received by the bailee in good condition and that they were in damaged condition when returned to the bailor, gives rise to an inference that the damage was caused through the fault or neglect of the bailee. Such an occurrence places upon the bailee the burden of producing evidence to show that the damage was caused without fault or neglect on his part. *Keenan Hotel Company v. Funk*, (1931) 93 Ind.App. 677, 177 N.E. 364. *See also Bottema v. Producers Livestock Association*, (1977) [174] Ind.App. [206], 366 N.E.2d 1189."

*Id.* at 873.

The effect of the rule is not to shift the burden of proof, but to shift the burden of producing evidence. *Erbacher v. Wargel*, (1984) Ind.App., 465 N.E.2d 194.

■ Before the rule applies, a bailment must exist, and the person charged must be a bailee. Here, Industrial, the owner of the tractor and trailer equipment, leased it to Subler, who by the terms of the lease, expressly assumed control of it, the driver, and the responsibility for it for the duration of the lease. I.C.C. regulations require that carriers operating under permits exert actual control over leased equipment; the borrowed drivers and the carriers are not permitted to circumvent such regulation by contract. A carrier may not

share or lend its operating authority under the pretext of a lease. *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.,* (1975) 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169. The presumption of negligence imposed upon a bailee arises out of his exclusive control of the bailed property. 8 C.J.S. *Bailments,* Sec. 50 (1962). A trip lease with driver included creates a bailment relationship wherein the lessor is bailor and the lessee is the bailee. *Morrow, Inc. v. Paugh,* (1950) 120 Ind.App. 458, 91 N.E.2d 858.

■ Subler attempts to invert the relationship and characterize Industrial as the bailee. Such is not the case. The true relationship is that of lessor and lessee. The lessee, Subler, assumed control over the vehicle and the cargo placed on it. Subler also attempts, without authority or even argument, to characterize Industrial as a carrier and then argues that a carrier is liable as an insurer. Subler possesses the permits and is the carrier, not Industrial.

■ Even if a bailment existed wherein Industrial was bailee, which we are of the opinion it did not, Subler's argument must fail. In attempting to characterize Industrial as a bailee, Subler argues that once possession of the goods was shown to be with Industrial, as bailee, a presumption of negligence arose, and Industrial has failed to rebut it. It argues that to escape liability, Industrial must prove the damage was caused by one of the following events: (1) an act of God; (2) a public enemy; (3) the fault of the shipper; (4) by public authority; or (5) by the inherent nature of the goods. *Maggard Truck Line, Inc. v. Deaton, Inc.,* (N.E.Ga.1983) 573 F.Supp. 1388, a carrier case, is cited in support thereof. We disagree. In *Central Transport, Inc. v. Great Dane Trailers,* (1981) Ind.App., 423 N.E.2d 675, a case where legal relations were not essentially different from here, the court applied the rule stated in *Spencer v. Glover, supra.* Ordinary negligence was the test. The question of whether or not a bailee's behavior complies with the duties imposed by law is a ques-

tion for the trier in weighing the evidence. *Central Transport, supra.*

■ Measured in that light, we find no error, as there is adequate evidence presented from which the trier could find that Industrial was without fault. As a matter of fact, we fail to see any evidence of negligence at all. It is not argued that Industrial should have foreseen, or discovered, a hole several cubic feet in size under a ten inch slab of concrete in the newly rented premises. We fail to see why Industrial should be held negligent as a matter of law for the failure to put pads under the landing gear already resting on a thick layer of concrete.

Issue II: *Indemnity.*

The trip lease contains language in three different paragraphs relative to obligations devolving upon Industrial to indemnify Subler.

Paragraph 3, after reciting the manner, amount and precondition by which Subler would pay Industrial for its leased vehicle, states:

"[A]t the time of payment, Lessee shall have the right to deduct from the amount due to Lessor whichever of the following items are applicable: (1) amounts advanced by or charged to Lessee; (2) telephone or telegraph charges incurred by Lessee; (3) *charges for shortage, damage or injury to cargo or property;* (4) charges for pick-up and delivery performed for a Lessor; and (5) any prior billing errors...." (Emphasis added).

Paragraph 4, after reciting that Lessor, Industrial, should pay all costs of operation, fuel, taxes, permits, tolls, licenses, repair, lubricants, tires, wages, liability insurance, injury to drivers and equipment, workman's compensation, unemployment insurance and social security, states:

"[L]essor shall make all payroll tax or other deductions required: axle, weight or other type of taxes, fees ...; *short-*

ages or damages to cargo...." (Emphasis added).

Paragraph 6 states in its entirety:

"The Lessor [Industrial] hereby agrees to indemnify and save harmless the Lessee [Carl Subler] from any and all claims, suits, losses, fines or other expenses arising out of, based upon or incurred because of ... *damage to property sustained or which may be alleged to have been sustained by reason of any negligence or alleged negligence on the part of the Lessor*, its agents, servants or employees. Nothing contained in this paragraph shall be construed to in any way limit the liability of the Lessee to the public in connection with the use of said equipment under this agreement." (Emphasis added).

The trial court made the following conclusions related to indemnity:

"3. That pursuant to paragraph (3) of the trip lease agreement, the plaintiff, Carl Subler, is entitled to damages to cargo by deducting the amount of damage ($3,730.82) from the amount Carl Subler agreed to pay Industrial Transport Services, defendant, for use of the tractor-trailer and Malcolm Zoll, Jr.

4. That pursuant to *Transamerican Freight v. Brada Miller, [Freight Systems, Inc.]*, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed. 169 (1975) the indemnity clause in paragraph six (6) concerns third-party injuries precluding plaintiff's claim for indemnity.

5. Any ambiguities in a contract are to be strictly construed against the party who employed the language and who prepared the contract. *Rieth-Riley Construction Co. v. Auto-Owners Mutual Insurance Co.*, 408 N.E.2d 640, 645 (1980). Plaintiff's failure to enumerate the term 'cargo' in paragraph six (6) as in paragraph three (3) of the Trip Lease renders the indemnity clause inapplicable to damage to cargo."

Indemnity clauses, identical to the one here, in trip leases have been held valid. *Transamerican, supra; General Expressways, Inc. v. Schreiber Freight Lines, Inc.*

(N.D.Ill.1974) 377 F.Supp. 1159. As shown above, indemnity is mentioned in three different paragraphs. The trial court applied paragraph three, but only to the extent of a set-off, and denied recovery under paragraph six because no third party was involved. Neither party, nor the trial court, addressed the indemnity language contained in paragraph four.

If the indemnity language contained in paragraphs three, four and six above is construed together, it would appear that Industrial has agreed to indemnify Subler for loss of cargo, but only within the qualifications contained in paragraph six: "for damage to property sustained or which may have been sustained by reason of negligence or alleged negligence on the part of the lessor". Subler places full reliance upon the applicability of paragraph six, but in its argument, it apparently assumes that indemnity is absolute while ignoring the qualification of negligence or alleged negligence. The court made no finding of negligence, and as stated in Issue I, we have found no compelling evidence of such. In *Transamerican, supra,* involving an identical indemnity clause, the U.S. Supreme Court remanded the case for a determination of negligence. We said in *Zebrowski & Associates, Inc. v. City of Indianapolis,* (1983) Ind.App., 457 N.E.2d 259:

"Confusion also arises at this point over the application of the phrase 'or is claimed to have been caused' found in the indemnity agreement. This phrase is relevant only to the original suit for damages brought by the injured party. It refers to the contractor's duty to defend actions brought against the utility for injuries alleged to have been caused by the contractors."

*Id.* at 263.

We also noted that an averment in a complaint of negligence in a case settled by the indemnitor is not conclusive. *Id.*

▉ Error is never presumed, and the burden is upon the appellant to demonstrate reversible error. *Kalbac v. Kalbac,* (1961) 132 Ind.App. 593, 177 N.E.2d 279.

**300**

The burden was upon Subler to bring itself within the terms of the indemnity to prove negligent conduct on the part of Industrial, and in this regard, it has failed.

Relative to attorney fees, it is generally true that the right to indemnity, created by the act of another, creates the right in the indemnitee to recover attorney fees as part of the damages which he has been compelled to pay as a result of suits for and against him in reference to the matter in which he is indemnified. *Price v. Amoco Oil Co.*, (S.D.Ind.1981) 524 F.Supp. 364; *Zebrowski, supra; Employers', etc., Assurance Corp. v. Citizens National Bank*, (1926) 85 Ind.App. 169, 151 N.E. 396. However, since Subler has been denied recovery, it is not entitled to attorney fees.

Issue III: *Counterclaim.*

Subler finally argues that the court erred in granting Industrial's counterclaim because Industrial did not have clean hands. The evidence shows that these expenses were incurred by Industrial at Subler's request upon a promise to pay. Subler again argues the bailment theory disposed of by us in Issue I. We are of the opinion that the court merely enforced the oral agreement entered into by the parties where Subler agreed to pay Industrial for the salvage costs. We do not weigh the evidence, determine the conflicts therein, nor judge the credibility of witnesses. We find no error here.

Judgment affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.