## NOBLE HACKER v. DAN YOUNG CHEVROLET, INC.

[No. 2-273A26.  Filed December 19, 1973.]

*John T. Manning, David S. Walker,* of Indianapolis, for appellant.

*Donald R. Anderson, Bose, McKinney & Evans,* of Indianapolis, for appellee.

HOFFMAN, C.J.—Plaintiff-appellant Noble Hacker (Hacker) filed his complaint for damages for the value of his tools,

which disappeared from the garage of defendant-appellee Dan Young Chevrolet, Inc. (dealer). Trial was to the court which entered its special findings of fact and conclusions of law and subsequently entered judgment thereon adverse to appellant-Hacker.

The facts most favorable to the appellee as disclosed by the record before us, are as follows: Hacker worked as a truck mechanic on a straight commission basis for the dealer and furnished his own tools. He was not required to furnish his own tools, but most mechanics did so to increase their productivity and, as a result, their income. Hacker, and each mechanic, locked their tools in heavy chests at night and left them on the dealer's premises.

During his employment, the mechanics' union that Hacker belonged to voted to strike against the dealer, and he agreed to honor the picket line. The first day of the strike, Hacker asked the dealer's service manager, Daniel Dowden (Dowden) what should be done about his tools during the strike. Dowden replied that they could be left on the dealer's premises, as a short strike was anticipated, or Hacker could remove them if he wished. The other mechanics were similarly advised by Dowden, and some were also told that their tools would be safe if left on the premises. Hacker and some other mechanics left their tools; the remaining mechanics removed their tools.

During the strike, the dealer hired a few non-union mechanics to work in its auto service area (auto shop), which is separate from the truck service area (truck shop) where Hacker worked. The truck shop was not in operation during the strike. Dowden allowed the new employees normal access to it, and left it otherwise unattended. However, the public was excluded from this area, and it was tightly secured at night. During this time, vehicles were sometimes driven through the truck shop to a rear lot, because this route avoided leaving the dealer's premises and driving partway around the block to re-enter the premises, and as a result eliminated two crossings of the picket line.

The strike was not as short as anticipated, and about two months later, while the strike was still in progress, Hacker was informed by the dealer that his tools had been lost or stolen. Due to this loss, Hacker was unable to return to work when the strike ended.

Hacker suffered a negative judgment below, and findings of fact and conclusions of law thereon were entered by the trial court pursuant to Rule TR. 52(A), Ind. Rules of Procedure. In its Finding No. 12, the trial court found that the dealer had not committed "any negligence * * * with respect to plaintiff's (Hacker's) property * * *."

The propriety of this finding is central to each of the issues presented for review in this appeal, therefore in the interests of clarity, this finding will be considered before the specific issues raised by Hacker. An examination of the basis of such finding and the standard of review it is subject to on appeal will clarify its relationship to the issues considered herein.

The evidence most favorable to the appellee and the reasonable inferences therefrom are sufficient to support this finding. The record shows that the dealer secured the truck shop each night by locking all doors and windows and cutting the power to its electric overhead doors. The rest of its premises were fenced, and the gates were locked and chained nightly. During the day, the truck shop area was closed to the public, as Hacker found when he attempted to enter the area. Further, Hacker was apparently satisfied with the security provided for his tools since he "checked on them" six times during the strike and still elected to leave them on the dealer's premises. There was substantial evidence to support the finding.

When a finding pursuant to Rule TR. 52, Ind. Rules of Procedure, is considered on appeal, this court must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. Rule AP. 15(M), Ind. Rules of Procedure; Rule TR. 52(A), *supra; First Nat. Bank of Mishawaka* v. *Kamm* (1972), 152 Ind. App. 353, 283 N.E.2d 563, 31

Ind. Dec. 304. To overturn such a finding on appeal, the court must be satisfied that it is "clearly erroneous." *Citizens Gas & Coke Utility Co.* v. *Wells* (1971), 150 Ind. App. 78, 275 N.E.2d 323, 27 Ind. Dec. 678.

There was sufficient evidence presented at trial to enable the trial court to make its Finding No. 12. As a result, this finding cannot be said to be contrary to law because it is not contrary to the evidence. Furthermore, mindful of the presumption in favor of the finding, and after a careful examination of the record, this court has no definite and firm conviction that a mistake was made by the trial court. Accordingly, the finding is not "clearly erroneous." The application of these holdings to the issues presented by Hacker in this appeal will become apparent.

The first issue presented for review is whether another of the trial court's findings, Finding No. 13, is contrary to law. Therein, the trial court found that only a gratuitous bailment relationship existed between Hacker and the dealer.

Since there is no evidence that the bailment existed for the sole benefit of the dealer, Hacker's contention must be construed to be that at least a bailment for mutual benefit existed as a matter of law. Assuming *arguendo* that such a bailment did exist, the finding sustained above concludes that the dealer committed *no* negligence. Therefore, the dealer had fulfilled even the higher standard of care required under the bailment relationship urged by Hacker. As a result, the trial court's alleged error in making Finding No. 13 was not prejudicial to Hacker, and cannot warrant reversal. *White* v. *The Chicago, St. Louis and Pittsburgh Railroad Company* (1890), 122 Ind. 317, 23 N.E. 782; *Cumberland Tel. etc. Co.* v. *Kranz* (1911), 48 Ind. App. 67, 95 N.E. 371.

Similarly, even if it could be said that the standard of care to which the dealer should have been held by the trial court was one of ordinary or reasonable care, the error would again not be prejudicial to Hacker, and therefore not reversible. This is because the dealer was found to have committed no

negligence, which is the conceptual equivalent of ordinary or reasonable care.

The second issue to be reviewed is whether the trial court improperly failed to accord Hacker the usual benefit of a *prima facie* case in bailment cases by failing to shift to the defendant-dealer the burden of showing its freedom from negligence. The tacit assumption is that Hacker was forced to attempt to affirmatively show the dealer's negligence.

However, as stated above, the trial court properly found with supporting evidence in Finding No. 12 that the dealer committed *no* negligence. It is to be assumed that Hacker introduced no evidence showing the dealer's freedom from negligence, but in any case it is immaterial who introduced the evidence, since the trial court may consider *all* evidence before it. Therefore, even if the burden of showing no negligence was not carried by the defendant, that burden *was* carried, and the trial court properly found for the dealer on this issue.

For the above reasons, the judgment of the trial court is affirmed.

Affirmed.

Lowdermilk, J., concurs; Staton, J., concurs with separate opinion.

## CONCURRING OPINION

STATON, J.—Noble Hacker's argument is with the sufficiency of the evidence. He contends that it does not support the trial court's "Special Findings of Facts." This is an appeal from a negative judgment. No error is presented on appeal. *Hiatt* v. *Yergin* (1972), 152 Ind. App. 497, 284 N.E.2d 834; *James* v. *McCaffry* (1973), 157 Ind. App. 480, 300 N.E.2d 889. It is only when the evidence is without conflict and leads to one conclusion and the trial court reaches a contrary conclusion that the trial court's judgment will be reversed as contrary to law. *Columbia Realty Corporation* v. *Harrelson* (1973), 155 Ind. App. 604, 293 N.E.2d 804; *Senst* v. *Bradley* (1971), 150

Ind. App. 113, 275 N.E.2d 573. A review of all the evidence gives ample support to the trial court's "Special Findings of Facts" Numbers "12" and "13." Any presumption of gross negligence was rebutted by the evidence as the trial court concluded in its judgment. The trial court's judgment should be affirmed.

NOTE.—Reported at 304 N.E.2d 552.