The plaintiff brought this action seeking to recover the fair value of his work tools which were stolen from his employer's premises. The plaintiff claimed that his employer was negligent in failing to lock the front door, in leaving the premises unattended, in failing to secure his tools by padlocking and chaining or in failing to provide an enclosed area for the storage of tools.
The essentially undisputed facts are as follows: The plaintiff was a diesel mechanic. The defendant was his employer. Their relationship had existed for nine years. Pursuant to industry custom, the defendant supplied all larger tools while the employees furnished their own hand tools. The plaintiff was hired with that understanding. pursuant to that custom and their understanding, the plaintiff maintained a two-piece tool chest in the work area of his employer's premises. The top section loaded with the plaintiff's tools weighed approximately 500 pounds. There were about twenty-five other tool boxes scattered around the work area.
On April 19, 1979, the defendant's volume of work required the services of two shifts of mechanics. The first shift worked from 8 a.m. to 4:30 p.m. The second shift worked from 3 p.m. to 11:30 p.m. Edwin MacDonald was the foreman of the second shift. On April 19 the plaintiff concluded his work on the first shift. After locking his tools in his box, he left the box in the rear of the work area alongside the truck he was repairing. The second shift reported for work as usual. The defendant was open for business that night until 11 p.m. A chain link fence surrounding the sides and rear of the building had been locked at the end of the day shift. The only access to the 39,000 square foot building was through the front door which led into the showroom area, the work area being to the rear of the building.
In accordance with their custom, the second shift employees took their "lunch" break between 7 and 7:30 p.m., some leaving the building to do so, while *Page 641 
others ate in a rear lunchroom. During this half hour, foreman MacDonald went back and forth between the lunchroom and work area answering phone calls and the like. He was out of the work area a total of ten minutes during the entire break.
Upon return from the "lunch" break, an employee noticed a battery charger was missing. The following morning, the plaintiff discovered that the top section of his box of tools weighing about 500 pounds was also missing. There were no signs of a forced entry into the building, it being ascertained that the foreman had checked to see that the premises were locked at the end of the second shift.
The plaintiff himself testified that it was the custom in the automotive repair business for employees to leave their tools in the shop area at the end of each shift. Within the preceding year there had been discussions at informal safety meetings about storing the employees' tools to avoid their damaging or being damaged by the large trucks moving about the area. The defendant's agents had offered to supply such an area where tool boxes could be wheeled and to obtain chains to secure the boxes. This had never come to pass. Despite these concerns, there was uncontroverted testimony that this was the first theft from the building in nine years.
The court concluded that "[s]ince the tools were being left on the premises of the employer overnight with the employer's knowledge and consent, a mutual bailment is found." This is not the case here.
A bailment is a consensual relation and it includes, in its broadest sense, any delivery of personal property in trust for a lawful purpose. 8 C.J.S., Bailments 1, p. 314. Assumption of control is the determinative factor. "[A] `bailee' is one who receives personal property from another in trust for a specific purpose, with a contract, express or implied, that the trust shall be *Page 642 
faithfully executed and the property returned or duly accounted for when the special purpose is accomplished . . . ." 8 C.J.S., Bailments 1, p. 321.
Here there was no delivery of the plaintiff's tools to the defendant nor receipt of them in a sense that could serve as a basis for concluding that the defendant had assumed control over them. Delivery connotes a handing over or surrender of possession to another. See Ballentine's Law Dictionary. Locking the tools in a box and leaving the box wherever one chooses in the work area of the employer's premises, pursuant to a trade custom, is not consistent with a handing over or surrender of possession of either the tools or the box to the employer within the meaning of a bailment.
A conclusion that there was no bailment is not necessarily dispositive of the ultimate issue, as the existence of a bailment does nothing more than create a presumption of negligence. "The failure of a bailee to return goods delivered to him raises a presumption that their nonproduction is due to his negligence. Dejon v. Smedley Co.,108 Conn. 659, 667, 144 A. 473 [1929]." Frissell v. John W. Rogers, Inc., 141 Conn. 308, 310,106 A.2d 162 (1954). "This presumption prevails unless and until the bailee proves the actual circumstances involved in the damaging of the property. If those circumstances are proved, then the burden is upon the bailor to satisfy the court that the bailee's conduct in the matter constituted negligence. Murray v. Paramount Petroleum Products Co.,101 Conn. 238, 242, 125 A. 617 [1924]; O'Dea v. Amodeo,118 Conn. 58, 63, 170 A. 486 [1934]." Griffin v. Nationwide Moving Storage Co., 187 Conn. 405,408, 446 A.2d 799 (1982); National Broadcasting Co. v. Rose, 153 Conn. 219, 225, 215 A.2d 123 (1965). If negligence may be independently demonstrated, the absence of the benefit of a presumption is not necessarily fatal to the plaintiff's cause of action. *Page 643 
In this connection, the trial court concluded that "[b]y not following up on the offer to set aside a caged or protected area or in supplying chains and insisting that the tool boxes be made secure each night, the defendant could be easily aware of the harm that was eventually suffered." The court further concluded that "[t]he employer controlled the work area and also set general policies to be followed by the employees. That control and management imposed an affirmative duty upon the employer that it failed to meet. If the adequate protection of the caged or locked area had been provided and a general policy of seeing that the employees used the protection had been enforced by the employer, then the duty would have been met."
"Negligence is a breach of duty. Collins v. City National Bank Trust Co., 131 Conn. 167, 170,38 A.2d 582 [1944]." Urban v. Hartford Gas Co.,139 Conn. 301, 304, 93 A.2d 292 (1952). That duty is to exercise due care. Steinhaus v. Steinhaus,145 Conn. 95, 97, 139 A.2d 55 (1958). "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised . . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Orlo v. Connecticut Co., 128 Conn. 231, 237, 21 A.2d 402
(1941).
"On the facts, the defendant could not be charged with that reasonable anticipation of harm which would be the basis of liability in negligence here. Reasonable care does not require that one must guard against eventualities which, at best, are too remote to be reasonably forseeable. Noebel v. Housing Authority, [146 Conn. 197, 202,148 A.2d 766 (1959)]; Goldberger v. David *Page 644 
Roberts Corporation, 139 Conn. 629, 632,96 A.2d 309 [1953]." Attardo v. Ambriscoe, 147 Conn. 708,712, 166 A.2d 458 (1960).
The defendant did not know, nor did its employees have any knowledge of facts which would charge it with knowledge that thieves would steal an employee's 500 pound tool chest. There was no evidence of prior thefts. On the contrary, there was evidence that there had been no thefts in the preceding nine years. A chain link fence surrounding the sides and rear of this commercial building were secured by the day shift. The sole night access to the 39,000 square foot building was through a single door leading into the show room. The tool chests, meanwhile, were in a maintenance area in the rear of the building. Employees were in and out of this area constantly. The totality of the facts and the circumstances militating against such a thing occurring remove the theft from the realm of what was reasonably foreseeable. The strongest evidence on the issue of foreseeability was the fact that the theft itself occurred. This isolated instance is not enough to impose upon the defendant the duty to exercise due care in preventing its occurrence.
 There is error. The judgment is set aside and the case is remanded with direction to render judgment for the defendant.
In this opinion DALY and BIELUCH, Js., concurred.