Jean **ERBACHER**, Plaintiff-Appellant,

v.

Karen **WARGEL**, Defendant-Appellee.

No. 1–1083A338.

Court of Appeals of Indiana,. First District.

June 26, 1984.

Rehearing Denied July 30, 1984.

Edward W. Johnson, Johnson, Carroll & Griffith, Evansville, for plaintiff-appellant.

James D. Lopp, Sr., James D. Lopp, Jr., Glenn A. Grampp, Evansville, for defendant-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant, Jean Erbacher (Jean), appeals the ruling of the Vanderburgh Superior Court granting a motion to correct errors which vacated a jury verdict and judgment rendered in her favor against defendant-appellee, Karen Wargel (Karen), in Jean's suit on a bailment contract for damage to her horse while it was being boarded by Karen.

We reverse.

## STATEMENT OF THE FACTS

It is undisputed that Jean owned a horse named Destry which was being boarded by Karen pursuant to an oral contract. Karen agreed to board the horse for $65.00 per month, which included feed and care. The parties do not dispute that the bailment relation existed. On May 28, 1980, at approximately 10:30 a.m., Karen's barn was destroyed by fire. Her own horse was killed, and Destry was injured, receiving burns which covered a substantial portion of his body.

Jean filed suit against Karen based upon a bailment theory which was tried before a jury. The court, at the close of Jean's evidence, and again at the close of all of the evidence, denied Karen's motions for judgment on the evidence. The jury then returned a verdict in favor of Jean for damages to Destry in the amount of $1,984.00, upon which verdict judgment was entered. Thereafter, the court granted Karen's motions to correct errors which vacated the verdict and judgment and entered judgment for Karen. The correctness of this ruling is the sole issue on appeal.

## DISCUSSION AND DECISION

The rule governing a bailment transaction was stated in *Bottema v. Producers Livestock Association,* (1977) 174 Ind.App. 206, 366 N.E.2d 1189. The court stated:

"The case of *Keenan Hotel Co. v. Funk,* (1931) 93 Ind.App. 677, 177 N.E. 364, while not factually identical is helpful by analogy in resolving the present case. That case involves a bailment situation where bailor left his car at a parking garage which was the bailee. The court, quoting from *Miles v. International Hotel Co.* (1919), 289 Ill. 320, 124 N.E. 599 held:

' "The weight of modern authority holds the rule to be that where the bailor has shown that the goods were received in good condition by the bailee and were not returned to the bailor on demand the bailor has made out a case of *prima facie* negligence against the

bailee, and the bailee must show that the loss or damage was caused without his fault ... *The effect of this rule is, not to shift the burden of proof from plaintiff to defendant but simply the burden of proceeding.*" And such *prima facie* case is not overcome by a showing on the part of the bailee that the goods have been burned, or otherwise destroyed or stolen. Before such *prima facie* case can be said to be overcome, the· *bailee* must *further produce evidence tending to prove that the loss, damage or theft was occasioned without his fault.* This rule has been applied to garage keepers who failed to return automobiles on demand.' (Emphasis added.)"

*Bottema, supra,* 366 N.E.2d at 1193. *See also Indiana Insurance Co. v. Ivetich,* (1983) Ind.App., 445 N.E.2d 110; *Spencer v. Glover,* (1980) Ind.App., 412 N.E.2d 870; *Hainey v. Zink,* (1979) Ind.App., 394 N.E.2d 238; *Employers' Fire Insurance Co. v. Consolidated Garage,* (1927) 85 Ind. App. 674, 155 N.E. 533; *Glazer v. Hook,* (1920) 74 Ind.App. 497, 129 N.E. 249; *Holt Ice and Cold Storage Company v. The Arthur Jordan Company,* (1900) 25 Ind. App. 314, 57 N.E. 575. The above cases recite and apply the stated rule.

The rationale for the rule was explained in *Holt Ice:*

"But the better reason underlies the doctrine, and is supported by the weight of modern authority, that when a plaintiff has shown that the bailee received the property in good condition and failed to return it or returned it damaged, he. has made out a *prima facie* case of negligence. An essential part of every bailment contract is the obligation to deliver over the property at the termination of the bailment. The bailor must prove the contract, the delivery of the goods to the bailee, and their return in a damaged condition. When he has done this the inference is deducible that the bailee is at fault and must answer, and especially is this true if the loss could not ordinarily have occurred without negligence. His failure to return the goods as delivered to him is inconsistent with what he agreed to do. The property was in his possession, under his care and oversight and away from that of the bailor, who, in most cases, could not know under what circumstances it was damaged. Generally speaking the *onus probandi* is upon the party who has to free himself from liability by proof of facts the knowledge of which is peculiarly within his· own power rather than of his adversary.

*Holt Ice, supra,* 25 Ind.App. at 329, 57 N.E. 575. *See also Glazer v. Hook, supra.*

 The bailee must exercise that degree of care for the protection of the bailed property which an ordinarily prudent person would exercise under the same or similar circumstances. Whether or not the bailee has failed to comply with this duty and is able to overcome the prima facie showing of fault is a question of fact for the jury. *Keenan Hotel, etc. v. Funk, supra; Hainey v. Zink, supra; Light v. Lend Lease Transportation Co.,* (1959) 129 Ind.App. 234, 156 N.E.2d 94; *Nimet Industries v. Joy Manufacturing Co.,* (1981) Ind.App., 419 N.E.2d 779. All of the evidence, that which was produced by the bailor, and that which was produced by the bailee, is to be considered to determine whether the bailee has met his burden. *Hacker v. Dan Young Chevrolet, Inc.,* (1973) 159 Ind.App. 28, 304 N.E.2d 552. The cases cited herein have applied this rule to such varied subjects as parking cars in garages, tools in the place of employment, property left for repair, and even warehoused butter.

Besides proof of the bailment for hire contract, delivery of Destry in good condition, care for him, payment of the board bill, and damages, Jean, in support of her case in chief, presented evidence that Karen's son, Brian, age 8½, was left alone at the home on May 28th while Karen and her other 18 year old son worked. Brian had been seen by a neighbor playing in the yard for about an hour and a half before the fire, and was seen within 40 feet of the barn, alone. Some matches, books, and

small boxes, some burned, some not, were found within four feet from the north side of the barn. There was no opening into the barn from that side, and Brian was neither observed in the vicinity nor seen playing with matches. Firemen were not able to fix the cause of the fire but explained that faulty wiring, matches, starting motors, arson, lightning and spontaneous combustion are among the possible causes of fires. The starting of motors, lightning and material calculated to cause spontaneous combustion were eliminated through evidence presented by Jean. Other circumstantial evidence which surfaced at the trial included the fact that Brian roamed the neighborhood. At a truck stop, Karen, in the presence of Jean, failed to respond to or deny a suggestion by a stranger that Brian started the fire. Karen gave Jean $500 of the insurance money to help on the loss. Finally, Karen was quoted as saying she had Brian on tranquilizers shortly after the fire.

Conversely, Karen presented evidence that she did not know what started the fire; however, she testified that Brian said he did not commit the act and she believed him. She admitted she left Brian home alone from 9:00 until 10:30, but an adult daughter was scheduled to appear at 11:00 a.m. to take care of her son. Brian was a responsible boy, not destructive, and he was capable of taking care of himself or calling the sister if necessary. Karen explained she gave Jean $500 and loaned her another $500 because she felt sorry for her. She denied that Brian had been tranquilized and stated that the man at the truck stop was a rambling old man who did not say it was her son who started the fire.

When the trial court granted the motion to correct errors, he made the following findings of fact and conclusions of law:

### "FINDINGS OF FACT

1. The plaintiff alleged that the defendant was 'negligent in that she left a very young child to play by himself who was seen playing with no parental supervision, by the barn, right before it was engulfed in flames'. The evidence discloses that said child was on the defendant's property at the time the barn was engulfed in flames, but there was no evidence that said child started the fire. In fact, there was no evidence as to the proximate cause of the fire other than by speculation.

2. The Court finds the act of the defendant leaving her child unattended, standing alone, is not evidence of chargeable negligence leading to the proximate cause of the barn fire.

3. The Court finds there was no evidence of the defendant's child having a propensity to set fires, play with matches or be otherwise prone to commit vandalism or be a destructor of property so as to put the defendant on notice that by leaving said child unattended, damage of the kind inflicted herein could reasonably have been foreseen by the defendant.

4. The Court further finds that the defendant could not have reasonably foreseen that the act of leaving said child at her residence, unsupervised at the time, could have resulted in the child playing with matches in such a way as to cause the barn to catch fire.

5. The Court finds that although there was evidence of burnt matches on the ground near the barn after the fire, there was no evidence that the defendant's child was present in the same site at or near the time of the fire or was even seen playing with matches.

6. The Court further finds the mere presence of a young child, unattended by an adult or other supervisory personnel, upon the premises of the defendant where a fire of undetermined origin took place does not give rise, in itself, of direct or circumstantial evidence or an inference of evidence that said child caused said fire to take place in the absence of some evidence that said child had a propensity to set fires, play with matches or in any other way was prone to vandalism.

7. The Court further finds there was no evidence the defendant could foresee or

reasonably foresee or be put on notice that by leaving her child unattended in the manner and place shown by the evidence that said child would or may commit an act which would cause a fire and thereby damage the property of the plaintiff.

8. The Court finds, in short, there was not sufficient evidence in this case of either proximate cause or chargeable negligence on the part of the defendant.

9. The Court finds that it erred in failing to grant the defendant's Motion for Judgment on the Evidence pursuant to Trial Rule 50 as the verdict of the jury on the issue of the defendant's negligence was clearly erroneous because the evidence was insufficient to support.

10. The Court further finds that from the evidence, the defendant was a bailee and was only bound to use reasonable and ordinary care to protect the property of the plaintiff, and that from all the evidence she did use reasonable and ordinary care as to the property of said plaintiff.

### CONCLUSIONS OF LAW

1. The Court finds that the Motion to Correct Errors should be granted because the verdict and judgment is against the weight of and is not supported by the evidence.

2. The Court further finds that it erred as a matter of law in failing to sustain defendant's Motion for Judgment on the Evidence presented at the conclusion of all the evidence."

It is clear from a reading of the findings and conclusions that the court found that Jean had failed to prove that Karen was guilty of any actionable negligence, yet he gave no consideration at all to the *prima facie* case of negligence which arose as a result of the admitted bailment and damage. We are of the opinion that Indiana authorities are clear that upon proof of the bailment and damage, Jean made out a *prima facie* case of negligence against Karen. The burden was then cast upon Karen to go forward with rebuttal evidence so as to prove that she was not at fault. Her proof merely consisted of assertions that she did not know what caused the fire. As stated in *Hainey, supra*, "whether or not Zink was able to overcome the *prima facie* showing of fault is a question of fact for the jury". *Id.* at 242. Karen's rebuttal proof, if believed, is not sufficient to prove absence of fault; even if it was sufficient, the jury was not compelled to believe it. As a matter of fact, the jury decided the fault issue adverse to Karen.

So far as the evidence shows, the cause of the fire, in reality, remains unknown and the *prima facie* case remains unrebutted. If the burden fell upon Jean to produce probative evidence that Karen negligently left a small boy unattended who set fire to the barn while playing with matches, the court may well have been correct. However, such was not the case, and the court erred in vacating the jury's verdict. This cause is now reversed and the trial court is directed to reinstate the judgment.

Judgment reversed.

ROBERTSON and RATLIFF, JJ., concur.