[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON JUDGMENT FOR THE PLAINTIFF
Facts
CT Page 8236
This case involves a suit and eventual trial concerning the complaint of the plaintiff Mason against the defendant Hoffman Ford, Inc. On June 19, 1992 at around 4:30 p. m. the plaintiff had his car towed to the defendant's lot for warranty service. At trial there was dispute over where the car was left by the tow truck. The plaintiff and his witnesses claim the car was left adjacent to the door of the interior garage — one witness said the door couldn't even be closed because the car was partway in the garage. This testimony supported the plaintiff's belief that the defendant's employees as far as he knew were intending on putting his Escort in the garage overnight. Defense witnesses testified that a car towed to the lot would never be left in such a location. Defense testimony was offered indicating only expensive luxury cars, police cars and cars which couldn't be locked were garaged when brought in for repair work. Also cars with costly or custom options would be garaged overnight if the customer specifically so requested. Mr. Mason didn't specifically request that his car be garaged nor was there any testimony that on the date of June 19 he pointed out to the defendant's employees that his car had expensive nonstandard audio and stereo equipment. Mr. Mason testified that he had brought his car to be repaired on prior occasions and an employee of the defendant that he knew commented on his stereo equipment. In what department this person worked is not clear and exactly when he made his comments in relation to June 19 was not established. The car had tinted windows so that it was difficult to view the interior from the outside. As noted there was conflicting testimony as to where the tow truck left the car. Even if the defense conjecture on this aspect of the case is accepted the defendant does concede the car was entered by an employee of the defendant who left an identification tag on the front mirror.
The car was not placed in an interior garage space. It was locked, however, and placed in a lighted open lot. The keys were locked in the service department office and the car was parked close to the defendant's building. At some time overnight the car was broken into, and the audio and stereo equipment was stolen and the car damaged. Although the complaint alluded to the possibility, there was no evidence presented to indicate an employee or agent CT Page 8237 of the defendant perpetrated these crimes so that the court assumes that this was a criminal adventure by an unknown person or persons.
1.
The complaint itself does not mention the legal concept of bailment. The parties at trial and in their briefs have referred to this legal concept when various aspects of the law of bailment were perceived to be to their advantage. The law of bailment developed complicated theories depending on whether the bailment was regarded as being for the sole benefit of the bailor, for the mutual benefit of the bailor and bailee, or for the sole benefit of the bailee. Depending on the nature of the bailment relationship a bailor had to show gross negligence or ordinary negligence or only a slight degree of negligence. As noted in a commentary in 8 Am.Jur.2d § 218 "Bailments at page 946."
 The modern theory, adopted by many courts and applied to bailees generally, is that there are no degrees of care or of negligence — that negligence is in all cases the same thing, namely, the absence of due care. The tendency of modern judicial opinion is adverse to the distinction between gross and ordinary negligence. Accordingly, the rule supported by many of the more recent authorities is that it is the duty of the bailee to exercise reasonable care, and that what constitutes reasonable care will depend on the nature, value and quality of the subject of the bailment, the circumstances under which it is deposited, and sometimes on the character, confidence, and particular dealings of the parties — in other words, on the terms of the implied undertaking of the bailee. It has been acknowledged by authorities holding this view, however, that as relative terms, convenient in indicating the measure of care required of the various classes of bailees where other factors remain equal, the language so long employed as descriptive of degrees of care and of negligence according to recompense may usefully by retained, provided such terms are not regarded as CT Page 8238 definitions.
 The rule of reasonable care is advantageous in that it is more easily adaptable to the particular circumstances of each bailment and, while recognizing variation in the care required according to recompense, avoids difficulties inherent in attempts at arbitrary separation into degrees by definition and the consequent diversion of attention from other circumstances affecting the measure of care required.
Thus in Johnson v. Bullard Co., 95 Conn. 251 (1920) the court found that because a truck was loaned to the bailee for its sole benefit only a gratuitous bailment could be found. A defect in the truck caused it to roll over leading to the death of the plaintiff's decedent. The court did not hold that because a gratuitous bailment was involved a negligence action would not lie against the defendant. It held, however, that in such circumstances a lower standard of care applied — the bailor of the truck only had to disclose a defect of which it was aware but it could not be made liable "for not communicating anything it did not in fact know, whether it ought to have known it or not," 95 Conn. at page 258.
It is not a far step from this type of analysis to question the very usefulness of a bailment analysis in cases where property is turned over to another and it is stolen, lost, damaged, or its contents taken. Two courts in so-called parking lot cases have abandoned the intricacies of bailment theory as no longer appropriate as a tool for analysis and have adopted a "new standard" of "reasonable care under the circumstances whereby foreseeability shall be a measure of liability", Garlock v.Multiple Parking Services Inc., 427 N.Y.S.2d 670, 677 (1980),McGlynn v. Newark Parking Authority, 432 A.2d 99, 103
(N.J., 1981). That was really the unexpressed thrust of Judge Covello's reasoning in Pinto v. Bridgeport MackTrucks Inc., 38 Conn. Sup. 639, 642-643 (1983). He paid due homage to ancient theory and recognized that under bailment theory "control is the determinative factor", id at page 641, cf MacAire Aviation Corporation v. Corporate Air Inc., 6 Conn. Cir. 238, 242 (1972) and found that the requisite control was not established in the case before him. But he CT Page 8239 then went on to say:
 "A conclusion that there was no bailment is not necessarily dispositive of the ultimate issue, as the existence of a bailment does nothing more than create a presumption of negligence. `The failure of a bailee to return goods delivered to him [sic] raises a presumption that their nonproduction is due to his [sic] negligence.' . . .' This presumption prevails unless and until the bailee proves the actual circumstances involved in the damaging of the property. If those circumstances are proved, then the burden is upon the bailor to satisfy the court that the bailee's conduct in the matter constituted negligence . . . . If negligence may be independently demonstrated the absence of the benefit of a presumption is not necessarily fatal to the plaintiff's cause of action.", id at page 642.
Cf Barnett Motor Transportation Co. v. Cummins DieselEngineers of Conn., Inc., 162 Conn. 59, 63 (1971) and its discussion on bringing complaint in two counts, bailment and negligence.
Thus the presumption of negligence in a bailment case is "merely a procedural device which shifts the burden of first producing evidence" (on the issue of negligence),Value-Rent-A-Car v. Collection Chevrolet, 570 So.2d 1376,1378 (Fla. 1990). It is fair to impose this presumption since the party defined as the bailee — because he has been found to be in control — is in the best position, practically speaking, to explain how damage came to the property, how it came to be stolen or damaged or how its contents were stolen.
Given this understanding of the rules that apply in bailment cases and the operation of the previously mentioned presumption, this court finds difficulty in accepting the defendant's argument that the defendant never accepted "control" of the contents of this car and therefore under bailment theory can't be held liable for their theft. Bailment theory is really only a negligence theory and the presumption based on "control" is a CT Page 8240 practical device to let the party best able to explain explain as best it can since it and not the owner had control over the property when it was lost or stolen.
From this practical point of view Lanman v. Nick'sSunoco Station Inc., 6 Conn. L. Trib #26 (3/28/80) is difficult to understand at least in terms of some of the language it uses. There the plaintiff left his car for repairs and in the trunk there were valuable gifts the full nature of which was not disclosed to the defendant garage owner. The court begins its discussion by saying that as to the gifts in the trunk the garage owner had no notice, therefore he had no control over them and a bailment did not exist as to the gifts. But it really makes no sense to split off the car as such and any duty the defendant owed as to its security from the contents of the trunk and say "control" existed as to the car but not as to the contents of the trunk. As to the car and its contents the defendant garage owner had control since the car was left in his custody and it makes sense under these circumstances to impose a presumption of negligence on the defendant. Interestingly when the Lanham court got down to discussing the facts and negligence issues it quite inconsistently with its prior statement cited as authority F FDistributors v. Baumert Sales Co., 164 Conn. 52 (1972); a bailment case which held that despite the operation of the presumption in its favor, the plaintiff had not made out a case of negligence.
All of this does not mean that the issue of notice and whether the party entrusted with property is fairly informed of its value is not important. The court will address this issue — it is crucial. But such considerations go to the standard of care itself and what duty should be placed on a defendant given what it was told about such value and the practical requirements of the business setting involved. As it was artfully put in an older case:
 "What is due care must as a rule depend on the circumstances of each case. For instance, what would be due care if the transaction involved a sack of potatoes would not necessarily be due care if the bailee was given a sack of diamonds." Sporsem v. First National Bank, 233 P. 641, 642
CT Page 8241 (Wash., 1925).
Cf Stoll v. Judd Co., 106 Conn. 551, 559 (1927).
If then in this case the presumption of negligence is held to operate against the defendant because it had control of the plaintiff's car and necessarily of its contents, how is the presumption to apply?
It is not absolutely clear from the cases but since the presumption in these bailment cases is one that appears to just shift the burden of first producing evidence once the requirements of the presumption are met by the defendant it should disappear from the case and have no bearing on the trier of fact's responsibility to decide the merits of the claim of negligence, Value Rent-A-CarCollection Chevrolet Inc., 570 So.2d at page 1376, Griffinv. Nationwide Moving Storage Co., 187 Conn. 405, 409
(1982), Barnett Motor Transport Co. v. Cummins DieselEngines of Conn. Inc., 162 Conn. at page 64, Friscell v.John Rogers Inc., 141 Conn. 308, 312, cf Conn. JuryInstructions, Wright Ankerman § 169, see especiallyMalone v. Santora, 135 Conn. 286 at page 291 (1949).
Once the presumption is held to operate a prima facie case is made out and judgment can be rendered against the defendant unless it rebuts the presumption by showing the actual circumstances under which the loss or damage occurred which has been held to include a showing of precautions that had been taken to try to avoid the type of loss or injury in question. Frissell v. John Rogers Inc., id at page 312, Griffin v. Nationwide Moving Storage, id at pp. 410-411.
Since as discussed the presumption is a burden of first producing evidence type it should not take a great deal of evidence to rebut — the circumstances of the loss must be shown and that steps had been taken prior to the loss to avoid the type of loss that did occur. Once that is done the burden shifts back to the bailor or property owner to show by a preponderance of the evidence that the precautionary steps taken were not adequate and given the type of property involved, the terms of recompense, industry standards, the value of the property, the person who held it knew or should have known about the defendant CT Page 8242 holding the property (the bailee) was negligent.
Here the actual circumstances of the loss were shown — the car was broken into. Also, the defendant did take some precautionary steps which at least met the bare minimum of overcoming the presumption — the keys were locked in the office, the car was parked in a lighted lot and close to the service building. The court believes the defendant has presented evidence that rebuts the initial operation of the presumption but in any event finds that the plaintiff has established the defendant's negligence by a preponderance of evidence in this case.
This car was left in a completely open lot whose lighting features provided as much assistance to thieves in spotting vehicles as it afforded protection to any of these cars. This was not a lot that had not experienced theft, vandalism or even arson. A police report was introduced showing 89 such incidents had occurred in an 18-month period — this represents five such incidents a month. The defendant makes much of the fact that 89 incidents represent only .004% of total service calls and points out that police reports don't reflect the merits of any claim or its outcome. But this should be sufficient notice to the defendant that thefts and vandalism were a possible problem on its lot at the rate of 5 incidents a month. Unlike the situation in Pinto v. Bridgeport Mack Trucks,Inc., supra at page 644, there was evidence of prior thefts, cf Fruehauf Corp. v. Aetna Insurance Co.,336 So.2d 457, 459 (Fla, 1976). The defendant also presented evidence that during the 18-month period referred to 22,000 individual customer work orders were written for repair service. This comes out to about 282 per week or 56 cars a day. The court can't assume all required overnight work but in any event even assuming they did, it would not be an overwhelming burden to place on a car dealership, to provide a locked, fenced-in area for 50 or 60 cars a night. In considering the standard of care in this type of case the court can consider the advisability or propriety of secure, fenced-in areas, see Barnett Motor TransportationCo. v. Cummins Diesel Engines of Conn., Inc., 162 Conn. at page 65-66, cf Pinto v. Bridgeport Mack Trucks, Inc., 38 Conn. Sup. at page 644, cf also Garlock v. Multiple ParkingServices, 427 N.Y.S.2d at page 678, also see Fruehauf Corp. v.Aetna Insurance Co. supra. CT Page 8243
The defendant had the opportunity to present evidence of common industry practices to try to show the appropriate standard of care relative to the requirement of putting up locked, fenced-in areas or providing other security measures such as security guards, Barron v. Eldredge,100 Mass. 455, cf E.B. McGurk Inc. v. Fuller, 14 Conn. Sup. 7,10 (1946). This might have been particularly relevant on the question of fair imposition of costs on the industry. The defendant chose not to present such evidence so the court as trier of fact cannot speculate as to what it might have shown.
Finally, as previously noted in this type of case, the appropriate standard of care has to be in part determined in light of the value of the property the defendant knew or should have known was being held.
The defendant points out that the plaintiff on June 19, 1992 gave no indication concerning the presence or value of any of the equipment in his car. The fact that at some prior date he told some employee of the defendant of his equipment or that person was otherwise aware of it cannot be construed as actual notice of the contents of the car on the 19th of June. It is not clear even as to what department this individual worked in or what responsibilities he had.
However, the plaintiff has cited cases which stand for the proposition that a party given control over or who receives a car under the circumstances the defendant did here is liable for the theft or loss of items that would ordinarily be expected to be in a car, Albright Inc. v.Guy, 696 S.W.2d 603, 605 (Tex., 1985). The defendant does not appear to disagree with this proposition itself citingKolee-Tober Shoes v. Hoery, 491 P.2d 589, 5911 (Colo., 1971), Davidson v. Ramsby, 210 S.E.2d 245, 249 (Ga., 1974). Also it has been held that a defendant would be responsible for the contents of a car which are in plain view, Palottov. Hanna Parking Garage Co., 68 N.E.2d 170, 175 (Oh., 1940),Barnette v. Casey, 19 S.E.2d 621, 624 (W.Va., 1942), Gilesv. Meyers, 107 N.E.2d 777, 779 (Oh., 1952).
Certainly in this modern day and age it is common knowledge that people have audio and stereo equipment on CT Page 8244 their car above and beyond the standard factory-installed equipment. This would be especially obvious to employees of a car dealership that service hundreds and even thousands of cars. One of the defendant's witnesses testified that people entering their lot do have upgraded stereos, car phones, etc. This is not the Lanham case where a person brought his car in for repairs and had valuable wedding gifts stored in the trunk. These are clearly not the type of items an auto repair shop should be held to have expected might be in the car and, unlike at least some of the items in the plaintiff's car, they were not attached to the car allowing for their easy removal by the owner.
Also the defendant concedes an employee did enter the car to place a repair identification tag on the car. That employee either saw or could have seen the equipment in the car so in that sense the equipment was in plain view — not in the trunk, for example. The defendant or people in its position could protect themselves by placing such a car in a secure area — i.e. in the garage. In fact that is a reason for finding liability in this case without even reaching the question as to whether the appropriate standard of care required a secure fence.
For all of these reasons the court finds the plaintiff has met its burden of proof and has established by a preponderance of the evidence that the defendant was negligent and its negligence proximately caused the damages that resulted to the defendant's car and the thefts that occurred of his property.
2.
The witnesses on both sides in this case were credible. The court found Mr. Mason to be a believable witness and accepts his testimony about the damage to the car. The items stolen and the value of those items stolen from the car were a radar detector and certain hi-fi amp equipment including four bazooka speakers, crossover equipment and three amps, electronic crossover equipment and an equalizer. To steal these items the thief or thieves damaged wiring, glass, window vent rain guards and portions of the dash. The defendant can appropriately testify as to value, see Griffin v. Nationwide Moving CT Page 8245Storage Co., supra at pages 420-423. Mr. Mason testified damage to the wiring was $87, damage to the dash was $47 and to the rain guards $46, damage to the windows was $289. The Hi-Fi amp equipment which was stolen included speakers valued by Mr. Mason at $1400, electronic crossover equipment valued by him at $96 and amps worth $136, the radar detector was valued at $296. The total damages awarded to the plaintiff are $2691 plus costs.
Corradino, J.