Lawrence KOTTLOWSKI, Mike Dietzel and Tony Harter, Appellants–Plaintiffs,

v.

BRIDGESTONE/FIRESTONE, INC., d/b/a American Tire & Service Subsidary of Bridgestone/Firestone, Inc., Appellee–Defendant.

No. 49A02–9509–CV–520.

Court of Appeals of Indiana.

Aug. 30, 1996.

Transfer Denied Feb. 20, 1997.

80

Donn H. Wray, Richard P. Winegardner, Stewart & Irwin, Indianapolis, for Appellants–Plaintiffs.

Richard D. Wagner, Malcolm C. Mallette, Matthew C. Breman, Krieg DeVault Alexander & Capehart, Indianapolis, for Appellee–Defendant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Lawrence Kottlowski, Mike Dietzel and Tony Harter (collectively "Employees") appeal from the trial court's entry of summary judgment in favor of their employer, Bridgestone/Firestone, Inc., d/b/a American Tire and Service Subsidiary of Bridgestone/Firestone ("Firestone"). Employees filed suit against Firestone when their toolboxes, containing their tools, were stolen from the Firestone shop. Employees claimed that Firestone was negligent and that a bailment for their mutual benefit existed. Following a hearing, the trial court entered summary judgment in favor of Firestone.

We reverse and remand.

### ISSUES

Employees present several issues for our review which we consolidate and restate as:

1. Whether the trial court erred when it determined as a matter of law that a bailment did not exist between the parties.

2. Whether the trial court erred when it concluded as a matter of law that Firestone owed no duty to Employees.

3. Whether the trial court erroneously concluded as a matter of law that even if there were a duty, Firestone was not negligent.

### FACTS

The facts most favorable to Employees show that they were employed as service technicians at one of Firestone's stores in Indianapolis. Employees were required to provide their own tools and toolboxes, a common trade practice. The tools and toolboxes were large and heavy, weighing approximately 1,000 lbs. per filled toolbox. Due to their size and weight, the toolboxes could not easily be moved.

While Firestone did not require that Employees leave their toolboxes overnight, given the size and weight of the toolboxes, as a practical matter it was understood that they would remain on the premises. Employees typically locked their toolboxes when they were not working, and Firestone did not have keys to the toolboxes. Firestone never moved or opened Employees' toolboxes.

Employees did not have a key to Firestone's shop and were not able to enter the premises at will. To obtain access to their toolboxes when the shop was closed, it was necessary for Employees to contact a Firestone supervisor and request entry. However, the Employees' attempts to gain access to

their toolboxes after business hours through a Firestone supervisor were never successful.

Firestone had been the scene of several criminal acts. Four tires were stolen in 1991 and in 1992, several cans of Freon were taken. In 1993, an individual armed with a knife had stolen money from the cashier and on another occasion someone attempted to break into the store after working hours. Then, between July 10, 1993, and July 12, 1993, Firestone was burglarized after the store had closed for the week-end. Employees' tools and toolboxes were taken from the building in a technician's truck. Thereafter, Employees filed their complaint for damages against Firestone and alleged that Firestone negligently failed to protect its premises and as a result, Employees' property was stolen. Prior to trial, Firestone moved for and obtained summary judgment in its favor. Employees appeal that decision.

## DISCUSSION AND DECISION

### Standard of Review

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Wells v. Hickman,* 657 N.E.2d 172, 175 (Ind.Ct.App. 1995). When reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any doubt as to a fact, or an inference to be drawn therefrom, in favor of the party opposing summary judgment. *Id.* Summary judgment is appropriate only when the designated materials show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *ITT Hartford Ins. Group v. Trowbridge,* 626 N.E.2d 567, 569 (Ind.Ct. App.1993), *trans. denied.* Summary judgment is rarely appropriate in a negligence action. *Frye v. Trustees of Rumbletown Free Methodist Church,* 657 N.E.2d 745, 747 (Ind.Ct.App.1995).

### Issue One: Bailment

Employees contend that the trial court erred when it granted Firestone's motion for summary judgment and concluded as a matter of law that a bailment did not exist between Firestone and Employees. We agree.

A bailment is an express or implied agreement between a bailor and a bailee in which the bailee is entrusted to accomplish a specific purpose with the bailor's personal property; when the purpose is accomplished, the property is returned to the bailor. *Iemma v. Adventure RV Rentals, Inc.,* 632 N.E.2d 1178, 1181 (Ind.Ct.App. 1994). No transfer of ownership occurs. *Id.* A bailment arises when: (1) personal property belonging to a bailor is delivered into the exclusive possession of the bailee and (2) the property is accepted by the bailee. *Id.* The standard of care a bailee owes a bailor is measured by the amount of benefit each party derives from the bailment. *Norris Automotive Serv. v. Melton,* 526 N.E.2d 1023, 1026 (Ind.Ct.App.1988). A bailment for mutual benefit arises whenever it appears that both of the parties to the contract receive a benefit from the transaction. 8 C.J.S. *Bailments* § 16, at 238 (1988). Ordinary care is required when the bailment is for the mutual benefit of the bailor and the bailee. *Norris Automotive Serv.,* 526 N.E.2d at 1026. Where the evidence is conflicting, whether or not there was delivery and acceptance under the bailment is a question of fact for the jury. 8 AM. JUR. 2d *Bailments* § 67, at 803 (1980).

### A. Delivery and Acceptance

To constitute delivery, as a general rule, there must be such a full transfer, either actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and give to the bailee, for the time being, the sole custody and control of the property. *Weddington v. Stolkin,* 122 Ind.App. 670, 675, 106 N.E.2d 239, 242 (1952). Acceptance requires either an express contract to take the article and later redeliver it, or circumstances from which such a contract can be implied. *Id.* When the evidence presented reveals that the bailee received the property in good condition, but it was damaged or lost prior to being returned to the bailor, an inference is raised that the bailee was negligent. *Norris*

*Automotive Serv.*, 526 N.E.2d at 1026. The bailee must then explain the loss of the goods and show the lack of negligence. *General Grain, Inc. v. International Harvester Co.*, 142 Ind.App. 12, 16, 232 N.E.2d 616, 618 (1968).

■ According to trade custom, Employees left their tools on Firestone's premises after working hours. Generally, the act of leaving articles in the work area of the employer's premises, pursuant to trade custom, is not consistent with a handing over or surrender of possession of the articles to the employer within the meaning of a bailment. 8 C.J.S. *Bailments* § 23, at 248 (1988). However, whenever an employee is required to bring his own tools to a job site and it is impractical for him to remove those tools at the end of the workday, the impracticality necessitates delivery to the employer for safekeeping, even if both parties exercise some degree of possession over the tools. *Mercer v. Columbia Equipment Co.*, 409 So.2d 1285, 1286 (La.Ct.App.1982), *writ denied* 413 So.2d 507 (La.1982); 8 C.J.S. *Bailments* § 23, at 248.[1]

■ Firestone correctly asserts that delivery requires possession, *Iemma*, 632 N.E.2d at 1181. Firestone argues that delivery did not occur because it did not "possess" the tools or toolboxes. Possession requires physical control over the property in question as well as an intention to exercise that control. BLACK'S LAW DICTIONARY 1163 (6th ed.1990). Firestone maintains that the trial court correctly determined that its offer of insurance to cover any loss or damage to Employees' equipment established that it did not intend to assume control over the Employees' tools and toolboxes. In essence, Firestone urges this court to conclude that an offer of insurance is necessarily equivalent to a disclaimer or denial of liability. We cannot agree with that assertion.

■ We are confronted with conflicting evidence of Firestone's intent, but taking all facts and inferences in a light most favorable to Employees, it is reasonable to conclude that Firestone intended to assume control over Employees' equipment. While Employees were required to provide their own tools and toolboxes as a condition of employment, Firestone did not actually require them to leave their equipment in the shop overnight. Nevertheless, Firestone understood that it was impractical for Employees to take their tools and toolboxes with them at the end of the working day and, thus, that Employees would be leaving those items at the shop after working hours. Firestone was aware that Employees customarily stored their tools in the service bay area of the store. Employees did not have keys to the shop and could only obtain access to their tools through Firestone management once the store had closed for the night or week-end.

■ The dissent states that "the tools in their boxes were merely located within the employer's premises overnight and on weekends. Such is not adequate to permit an inference of a bailment relationship." However, there is evidence of probative value to support the conclusion that the parties intended to create a bailment for mutual benefit. As we have noted, the facts reveal that the Employees were required to provide their own tools, that it was impractical to remove the tools and toolboxes on a daily basis and that Employees did not have access to their tools after working hours. These facts support a reasonable inference that the Employees and Firestone understood that Firestone would assume control over the tools after working hours and, hence, that there was a delivery and acceptance. In considering the propriety of a summary judgment, this court does not weigh the evidence but must indulge every factual inference in favor of the nonmoving party. Under our standard of review, we cannot say as a matter of law that the tools were "merely located" on the premises. The trial court erred when it concluded as a matter of law that a

---

1. In *Hacker v. Dan Young Chevrolet, Inc.*, 159 Ind.App. 28, 304 N.E.2d 552 (1973), a case factually similar to the instant case, the trial court concluded that a bailment existed between the parties and this court indicated that a bailment for mutual benefit could arise between an employer and an employee. However, in *Hacker*, we affirmed the trial court's finding that the defendant was not negligent because the employer's premises were adequately secured.

bailment did not arise between Employees and Firestone.[2]

## B. Negligence

█ Firestone further argues that the trial court correctly concluded that even if a bailment existed, Firestone was not negligent. We disagree.

█ The standard of care owed by a bailee to a bailor is measured by the amount of benefit each party derives from the bailment. *Iemma*, 632 N.E.2d at 1181. The bailee must use ordinary care when the bailment is for the mutual benefit of the bailor and bailee. *Norris Automotive Serv.*, 526 N.E.2d at 1025. A prima facie case of negligence exists upon proof that a bailment existed and damage occurred. *Erbacher v. Wargel*, 465 N.E.2d 194, 198 (Ind.Ct.App.1984). Once a prima facie case is established, the burden shifts to the bailee to prove that he was not negligent. *Id.*

█ As stated above, a trier of fact could conclude that a bailment existed between the parties and that Employees established a prima facie case of negligence because their tools and toolboxes had been stolen. Firestone then had the burden to conclusively establish that it was not negligent. The trial court concluded that "there is no showing that the Defendant [Firestone] did not use ordinary care and diligence with respect to protecting Plaintiffs' [Employees'] property." Record at 211. However, there was conflicting evidence about what measures Firestone may or may not have taken to keep the shop secure. We cannot agree with the trial court that Firestone met its burden and proved conclusively it was not negligent. The issue of whether a bailee met the applicable standard of care is a question of fact for the trier

of fact. *Iemma*, 632 N.E.2d at 1181–82. Thus, we cannot say, as a matter of law, that Firestone proved it was not negligent.

## Issue Two: Duty

Employees assert that even if a bailment does not exist, they are entitled to pursue a common law negligence claim against Firestone. Thus, they argue that the trial court erred when it concluded as a matter of law that Firestone owed them no duty. We agree.

█ In this case, liability need not be predicated upon a bailment for mutual benefit. *See Plant v. Howard Johnson's Motor Lodge*, 500 N.E.2d 1271, 1274 (Ind.Ct.App. 1986), *trans. denied.* Our tort law imposes liability for the failure to use ordinary care where there is a duty to do so. *Id.* Whether the law recognizes an obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991). For the court to impose a duty on a party, three factors must be balanced (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Id.*

█ Present within Indiana law is the clear-cut principle that it is an employer's duty to protect its employees from its own negligence. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co. v. Gossett, Administratrix*, 172 Ind. 525, 532, 87 N.E. 723, 727 (1909); *Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623, 629 (Ind.Ct.App. 1983); *see* J.A. Bryant, Jr., Annotation, *Employer's Liability For Theft or Disappearance of Employee's Property Left at Place of*

---

**2.** Firestone urges this court to consider similar cases from other jurisdictions which have held as a matter of law that a bailment did not exist. We are not persuaded by the cases from other jurisdictions which concluded that a bailment did not exist as they are factually distinguishable. *E.g.*, *Collins v. Boeing Co.*, 4 Wash.App. 705, 483 P.2d 1282 (1971) (toolbox weighed 80 lbs.), *K–B Corp. v. Gallagher*, 218 Va. 381, 237 S.E.2d 183 (1977) (theft occurred during working hours), *Shingler Motors, Inc. v. West*, 127 Ga.App. 230, 193 S.E.2d 60 (1972) (employee had access to the store). Finally, in *Pinto v. Bridgeport Mack*

*Trucks, Inc.*, 38 Conn.Supp. 639, 458 A.2d 696 (1983), the Connecticut court concluded as a matter of law that there was no delivery of the tools because leaving tools in the work area pursuant to trade custom is not consistent with handing over or surrender of possession within meaning of bailment. However, as noted earlier, this court considered whether a bailment existed under similar circumstances in *Hacker v. Dan Young Chevrolet*, 159 Ind.App. 28, 304 N.E.2d 552 (1973) and, as previously stated, an exception exists when it is impractical for an employee to remove his tools.

*Employment,* 46 A.L.R.3d 1306 (1972) (Negligence, apart from bailment, has been recognized as basis for recovery in employer/employee relationship). Although this principle has been typically applied in reference to physical injuries incurred in the employer/employee relationship, this general principle has also been extended to include economic injury. *Eby,* 455 N.E.2d at 629. Thus, the employer/employee relationship here supports the imposition of a duty.

▪ In analyzing the foreseeability component of duty, the court must focus on whether the "person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable." *Webb,* 575 N.E.2d at 997. To a great extent, duties are defined by the foreseeability of relevant harms. *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248 (Ind. 1996). The duty of reasonable care is not owed to the world at large but is limited to those who might reasonably be foreseen as being subject to injury by the breach of the duty. *Webb,* 575 N.E.2d at 997. Here, Employees' equipment had been stolen after working hours from the Firestone premises. Several criminal acts had occurred during the four years preceding the break-in and theft of Employees' tools and toolboxes. Given the prior recent criminal activity, it is reasonably foreseeable to conclude that a break-in could occur after working hours at the Firestone store and that equipment would be stolen. Thus, a reasonably foreseeable victim was injured by a reasonably foreseeable harm.

▪ "Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Id.* Public policy supports the imposition of a duty in this case because Firestone was in the best position to discover and prevent Employees' injury. We do not agree with Firestone that the imposition of a duty in this case would result in absolute liability of employers "even where the premises are secured by locked doors and windows and the premises have never been burglarized." Brief of Appellee at 38. The imposition of a duty is not equivalent to the

imposition of liability. Before imposing liability, the trier of fact would need to conclude that Firestone breached its duty which breach proximately caused Employees' injury. The three factors recited in *Webb* support the imposition of a duty here. The trial court erred when it entered summary judgment on the issue of duty.

### Issue Three: Negligence

▪ Finally, apart from the question of duty, Employees contend that the trial court erred when it concluded, as a matter of law, that Firestone was not negligent. Again, We must agree.

▪ As we have noted earlier, a negligence action is rarely an appropriate case for summary judgment. *Wells,* 657 N.E.2d at 175. Even if a trial court does not believe the party will be successful at trial, summary judgment should not be entered where material facts or inferences conflict. *Id.* However, a plaintiff can recover for negligence only if he establishes that the defendant breached a duty owed the plaintiff which proximately caused the plaintiff's injuries. *Id.*

▪ In a bailment relationship the bailee must conclusively establish that it was not negligent. *See* Issue One. However, in a common law negligence action, Employees must establish that Firestone breached its duty and that the breach proximately caused Employees' injury. Employees and Firestone offered conflicting evidence as to what constitutes ordinary and reasonable care under the facts and circumstances of this case. Contrary to the dissenting opinion's suggestion, we are not requiring Firestone to provide a "burglar-proof" store or take "extraordinary security measures." Rather, this court is requiring Firestone to exercise ordinary and reasonable care. We cannot agree with the dissent that as a matter of law, Firestone had taken appropriate measures to secure the store and that the premises were entirely secure at the time of the burglary. When the critical question for resolution is whether the defendant exercised the requisite degree of care under the factual circumstances, summary judgment is inappropriate. *Randolph County Hosp. v. Livingston,* 650

N.E.2d 1215, 1217 (Ind.Ct.App.1995). This issue is generally a question for the trier of fact, and not answerable as a matter of law. *Id.* Thus, we conclude that the trial court erred when it concluded as a matter of law that Firestone was not negligent and granted Firestone's motion for summary judgment.

Reversed and remanded.

ROBERTSON, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The trial court did not determine that there was no bailment, except as such determination may be implied by the conclusion that Firestone owed no duty to the employees.

Be that as it may, I disagree with the majority's holding that there was evidence of such bailment. Notwithstanding the indicia of employer "control" perceived by the majority as set forth in their opinion, in my view, the employer here lacked the exclusive possession and assumption of control essential to a bailment. The tools in their boxes were merely located within the employer's premises overnight and on weekends, and only because of the bulk and weight of the tools in their boxes were they routinely stored in that manner. Although it would have required communication and a bit of inconvenience to obtain after-hour entry to the premises in order to remove one's tools, such was possible and was permitted. Employees did, from time to time, remove some of their tools from the premises for personal use overnight or on weekends. The evidence of "control" alluded to by the majority is not adequate to permit an inference of a bailment relationship.

More importantly, however, I would hold that as a matter of law Firestone did not breach a duty to the employees. As a matter of law, Firestone was not negligent.

The majority holds that it was reasonably foreseeable "that a break-in could occur after working hours at the Firestone store ..." Op. at 85. The mere *possibility* of a criminal act by third persons despite a few prior and widely separated incidents, is an inadequate basis upon which to found a successful negligence claim.

Furthermore, I would hold that as a matter of law the premises were entirely secure at the time of the burglary. In this regard it is important to note that entry by the burglars was effected by prying open, with great force, the door jamb of a fire door, seriously damaging the door, breaking the lower door handle and exposing one of two deadbolt locks, which was also pried from the door jamb.

It was not required that Firestone make its store absolutely burglar-proof. It was not necessary to take extraordinary security measures such as suggested by the employees. Employers are not required to employ full-time armed security guards or install elaborate burglar alarm systems in order to avoid tort liability. The precautions taken here were adequate as a matter of law.

I would affirm the summary judgment.